[No. 1466. Decided January 14, 1895.]

DANIEL O'LEARY, *Respondent, v.* JAMES DUVALL, ET AL., *Appellants.*

FRAUDULENT CONVEYANCES — CREDITOR'S BILL — SUFFICIENCY — EVIDENCE.

In an action seeking to subject land fraudulently conveyed to the lien of a judgment, the complaint sufficiently states that the defendant had no other property out of which the execution could be satisfied, when it alleges that there was a return of *nulla bona* on the execution issued, and that the property attempted to be conveyed was all the property owned by the judgment debtor.

Where a debtor conveys all his property for the purpose of defrauding his creditors, and the grantee takes with knowledge of the intent to defraud, the fact that a full cash consideration was paid for the property will not relieve it from liability to the claims of creditors of the grantor.

The conveyance by one of all his property to a brother, who lived with the grantor and sustained intimate business relations with him, will be deemed fraudulent, although for a valuable consideration, when it appears that a judgment had been obtained against the grantor, who said that the judgment creditor would never get a cent on the judgment, as he would fix it so that he could not get anything ; that the deed was made on the day of the judgment but not delivered until after a motion for a new trial; that the grantor had received a large amount of cash for the transfer without applying any of it upon the judgment ; and that the grantee had said he had purchased his brother's place because he had got into trouble and did not want to have any property, as there was no telling how the court might decide.

*Appeal from Superior Court, King County.*

*Charles E. Patterson* and *William L. Thompson*, for appellants.

*Thompson, Edsen & Humphries*, for respondent.

The opinion of the court was delivered by.

DUNBAR, C. J.—This is an action brought by the respondent, Daniel O'Leary, against the appellants, James Duvall and James H. Woolery. The complaint alleges, substantially, that on the 28th day of January, 1893, the respondent purchased of James O'Leary the real estate mentioned in the complaint, together with other property, and paid him for the same ; that the deed was duly executed to him for said property and recorded on February 3, 1893 ; that on the 27th day of January, 1893, the appellant Duvall obtained a verdict against James O'Leary in the superior court of King county, for $500 ; that afterwards on the 28th day of February, 1893, one Marian Hamilton recovered a verdict against said James O'Leary for $500, for slander ; that afterwards the judgment of Marian Hamilton was assigned to the appellant, James Duvall ; that afterwards Duvall had execution issued upon the judgment ; that the execution was returned unsatisfied ; afterwards another execution was issued and levied upon the real property described in the complaint ; that the sheriff was proceeding to advertise the same for sale when the respondent commenced the suit at bar and asked that a permanent injunction be issued preventing the sale of the land to satisfy the judgment. A temporary injunction was granted. Appellant Duvall filed a cross-complaint, asking that the land be subjected to the payment of the judgment above mentioned, on the ground that the conveyance to Daniel O'Leary was fraudulent as to his creditors. Upon these issues the case went to trial and judgment was rendered in favor of the respondent for costs, and a perpetual injunction was granted against the appellants.

Respondent moves to dismiss the appeal for the reason that the court has no jurisdiction ; but we think there is no merit in the motion and it will therefore be denied.

The facts in the case, in regard to the two several judgments and the execution of the deed were about as follows : On May 26, 1892, Duvall commenced suit for damages for malicious prosecution against James O'Leary, and on January 27, 1893, a verdict was had therein for Duvall for $500 and costs. On January 28, 1893, O'Leary filed a motion for a new trial, which was overruled on February 28, 1893 ; and on the same day judgment on said verdict was entered for $500 and costs. In the same court, on September 28, 1892, Marian Hamilton commenced suit against said O'Leary for damages for slander. About January 21, 1893, by order of the court, said cause was set for trial on February 9, 1893; and upon April 1, 1893, judgment upon the verdict was entered for the plaintiff for $500, and costs. On January 28, 1893, the same day upon which O'Leary filed his motion for a new trial in the Duvall suit, he prepared and executed a deed as grantor to the property in dispute, to the respondent, Daniel O'Leary, as grantee. This deed he did not deliver to Daniel O'Leary until February 2, 1893. The deed recited a consideration of $6,000. On the same day, February 2, James O'Leary also assigned to said Daniel O'Leary a note and mortgage owned by him securing an indebtedness of $4,000, for the expressed consideration of $4,000. Daniel O'Leary, the grantee, is a brother of James O'Leary, the grantor, and the testimony shows that James O'Leary made his home with his brother Daniel O'Leary during the pendency of the litigation in which he was involved, he being an unmarried man.

It is contended by the respondent that the cross complaint of the appellant, Duvall, defendant below, does not state a cause of action, in that it does not state that the defendant had no other property out of which the execution could be satisfied. The allegation of the complaint is that said property so attempted to be conveyed was all the property owned by said James O'Leary, real and personal ; with the further

allegation that there was a return *nulla bona* on the execution issued. We think this is sufficient. If the property conveyed was all the property owned, it necessarily follows that there was no other property out of which the execution could be satisfied. This court has often held that if the substance and sense are satisfied, it will not reverse a case or hold a pleading bad because it is not stated in any particular form of words.

The respondent cites Wood on Fraudulent Conveyances, § 143, to the effect that if a debtor is perfectly solvent he can do what he will with his property so long as he does not dispose of so much of it as to disable him from paying his debts. This is a rule of pleading as well as of evidence. Hence a bill which contained no allegation that the debtor at the time of the alienation was insolvent or embarrassed was held bad, for it is only when an inadequate amount of property remains that creditors have the legal right to complain. The court said that "for aught it appeared in the pleading the debtor might have been possessed of ample means, other than the property in controversy, to pay his debts, and in such a case the conveyance is not ordinarily open to the attack of creditors."

A law thus laid down does not militate against the pleading in this case, for it does appear from the allegation of this complaint that no adequate amount of property remained, and further that no property at all remained. It is true, as respondent asserts, that this text is supported by a long list of authorities, some of which are quoted by the respondent, but the authorities, like the text, simply hold in substance that it must appear both from the allegations, when the question is upon the pleadings, and from the testimony, when it is a question of fact, that there was no property other than the property in dispute out of which the creditors could satisfy their claim. The general proposition, of course, cannot be disputed, that it is no concern of the creditors what a debtor may do with any particular property so long as he has sufficient other property subject to execution to satisfy their claims. So that the question here is

whether the testimony shows that it was the intention of James O'Leary to defraud his creditors in disposing of this land to his brother ; and secondly, whether the brother knew of such intention, if it existed, or whether his position was such that the law will raise the presumption of knowledge against him, or impute knowledge to him.

We can hardly understand the legal argument advanced by the respondent, that this action cannot be maintained because it is not shown by the testimony that James O'Leary was insolvent, from the fact that the testimony shows that he was paid $7,000 for this land.   The money that he received for the land could not be reached by the appellants, and it was simply a case where a debtor was disposing of all of his property ; and if the purchase price could be taken into consideration to refute the idea that the debtor had nothing out of which the creditors' execution could be satisfied, the law in opposition to fraudulent conveyances would, in a majority of instances, be rendered absolutely useless and nugatory.   Under circumstances of this kind it requires two elements to make the transaction valid, viz., good faith and a valuable consideration.   If the transfer is for a valuable consideration the remaining question is whether it is *bona fide*; and if it is not in good faith, it matters not whether the consideration was adequate or not.   The rule is thus announced in Bump on Fraudulent Conveyances, p. 199 :

"The reason is manifest.   Fraud may as readily be effected when a full and fair price is paid as when nothing is paid.   A person may be resolved not to pay his debts, and another knowing this may treat with him and purchase his whole estate at a fair and full price, and thus enable him to defeat the claims of his creditors.   Although the purchaser gains no advantage, he enables the debtor to evade the payment of his debts, and the effect upon the creditors is precisely the same as if nothing were paid.   As it is the intent to withdraw the debtor's property from the reach of his creditors that generally makes a transfer for full value fraudulent.   *   *   *   *   *   *   If the grantee has notice of the debtor's fraudulent intent, the transfer is void with-

out reference to his actual intent. The law in such case charges him with that guilty knowledge which makes him a participator in the fraud. * * * It is not necessary that the grantee shall have actual knowledge of the debtor's intent to delay, hinder or defraud his creditors in order to render the transfers void. A knowledge of facts sufficient to excite the suspicions of a prudent man, and to put him on the inquiry, or to lead a person of ordinary perception to infer fraud, or the means of knowing by the use of ordinary diligence, amounts to notice and is equivalent to actual knowledge in contemplation of law. * * * If the grantor and grantee are relatives, or are intimate, this is a fact from which it may be inferred that the latter knows the former's financial condition.''

These statements in the text are amply borne out by the authorities, and the only question is whether the testimony adduced at the trial brings this case within the law as quoted. It will be noticed in the first place that the relations are intimate, the two O'Learys being brothers. In the second place, that they lived together. In the third place, that their business relations were intimate ; for it appears from the testimony that Daniel O'Leary and James O'Leary were partners in business to the extent of each one of them owning an undivided one-half interest in the lands in dispute. It further appears from the testimony that the suits against James O'Leary were matters of public report. That it was the intention of James O'Leary to dispose of this property for the purpose of preventing the creditors from obtaining the fruits of their judgment, is so manifest that it will scarcely be denied by any one. The fact that the deed was made on the day upon which the judgment was rendered; that it was held until after he made his motion for a new trial ; that he received the amount of money which he claims to have received without appropriating it on the judgment ; and the further facts that prior to the making of the deed he stated to witness Murdock that the property was yet in his name ; that he was having trouble with Duvall, but Duvall would never get a cent because he, O'Leary, would fix it so that Duvall would not get anything ; and that he was not going

to pay the judgment; place this phase of the case beyond a peradventure, and the matters which we have before related, together with the further facts that Daniel O'Leary stated to the witness Richardson, in speaking of this transaction, that he had purchased his brother's place, that he wanted to sell it because he had got into trouble with Duvall, and didn't know what the court might rule; that "there was no telling how the damned court might decide," and that "Jim didn't want to have any property"; also firmly convince us that the respondent, whether or not he paid a valuable consideration, did it for the purpose of assisting his brother to avoid this judgment.

It is true that O'Leary says, in substance, that he knew nothing about this affair, and that he bought the land because he wanted it, and paid a valuable consideration for it; and it is no doubt true, as respondent states, that the court believed it. But while this court will not altogether disregard the judgment of the trial judge, from the fact that he has better opportunities of judging of the credibility of the witnesses than this court has, yet this is an equitable case and it is the policy of the law to have it tried *de novo* in this court; and when it plainly appears to us that the testimony will not sustain the findings of the trial judge, it becomes our duty to find in accordance with the impression that the testimony makes upon us. The fact that the respondent took the pains to have the money paid at the lawyer's office with all due formality, and in such a manner as to call the attention of the lawyer to the details of the payment, does not, in our mind, strengthen the respondent's case. Ordinarily, in a transaction between two brothers bearing the intimate relation to each other that the testimony shows these brothers did, it would not be considered necessary to make this demonstration. The inference is that it was done for effect, and to publish the *bona fide* appearance of the transaction.

As we view the testimony, it plainly appears that the transaction was a fraud upon these appellants, and the judgment of the court will therefore be reversed, and the cause

remanded with instructions to grant the relief prayed for in the cross complaint of appellants.

HOYT, SCOTT and STILES, JJ., concur.