[No. 3202.   Decided March 24, 1900.]

JOHN W. TROY, as Receiver of Angeles Manufacturing and Development Company, et al., Respondents, v. D. W. MORSE et al., Appellants.

FRAUDULENT CONVEYANCES—EXCHANGING PROPERTY FOR CORPORATE STOCK—INSOLVENCY—PREFERENCE OF CREDITORS.

Where one who is heavily indebted transfers all his property to a corporation, and has its stock delivered to certain of his creditors whom he wishes to prefer, the transfer cannot be set aside as in fraud of creditors, unless a specific intent to defraud is shown outside of the transaction itself: a debtor always having the right to change the form of his property, and also to prefer one creditor to another.

Appeal from Superior Court, Clallam County.—Hon. WILLIAM HICKMAN MOORE, Judge.   Reversed.

*George C. Hatch,* for appellant.

*Benton Embree,* for respondent:

Upon the point that the transfer of a debtor's property to a corporation will be set aside, when made to hinder and defraud creditors, counsel cites *Bennett v. Minott,* 44 Pac. 288; *Metcalf v. Arnold,* 20 South. 301 (55 Am. St. Rep. 24); *Henderson v. Adams,* 48 Pac. 398; *Clark v. Bradley Co.,* 23 Wash. Law Rep. 419; *Rielle v. Reid,* 28 Ont. 497.

The opinion of the court was delivered by

FULLERTON, J.—In February, 1895, the appellants, D. W. Morse and Celia A. Morse, were husband and wife, and as a community were the owners of certain real and personal property, situate in Clallam county, Washington, a part of the personal property being a general merchandise store which D. W. Morse conducted. The whole property was of the value of about $3,000. Morse was heavily indebted, and among his creditors were the appellant, Christensen, to whom he owed $2,500; the respondent, John W. Troy, as receiver of the Angeles Manufacturing & Development Company, to whom he owed $1,091; the respondents, Tarbox, Schlick & Co., to whom he owed $320; and one Robert M. Wood, to whom he owed $2,500. Wood, to secure $1,000 of the amount due him, held a mortgage upon the real property of Morse. Morse at that time was being pressed by his creditors, and, desiring to prefer Christensen and Wood to the others, the Morses and Christensen entered into an agreement by the terms of which they were to form a corporation to which Morse and wife were to convey all of their property in full payment of the capital stock issued; the capital stock was to be divided into two hundred shares of the par value of one hundred dollars each, of which Christensen was to take ninety-nine shares in satisfaction of his debt, Morse one hundred shares, and the wife of Morse one share; Morse

agreeing to transfer his shares to Wood, and obtain from Wood a release of the mortgage on the real property. The corporation was thereupon formed, and the conveyances and transfers made in accordance with the agreement. Subsequent to that time the receiver and Tarbox, Schlick & Co. obtained judgments for the amounts due them, and issued executions against the property of Morse, which were returned unsatisfied, whereupon they brought the present action to set aside the conveyance of the real property made by Morse and wife to the corporation, alleging it to be fraudulent and void as against Morse's creditors. The lower court found "that said transfer and conveyance was made by said Morse and wife with intent on the part of each of them to hinder, delay, and defraud the creditors of said D. W. Morse," and adjudged the transfer void.

We think the court erred in his findings and judgment. The owner of property is not deprived of dominion over it by becoming insolvent, nor have his creditors any right to insist that his property shall remain in any given shape. " He may exchange his property for other property, or sell it and apply the proceeds, in his discretion, to his debts, his purchases, or his maintenance. He has the right to manage, control, mortgage, pledge, and deal with it, and enter into business contracts in relation to it, in such way and manner as he deems will best conduce to its preservation and increase." Neither is it fraudulent *per se* for an insolvent debtor to join with others in the formation of a corporation, convey and transfer his property to it, and accept its stock in payment of the property so conveyed and transferred. Such a transaction will not be set aside unless there is a specific intent on the part of the debtor to hinder, delay, and defraud his creditors, which intent must be found outside of the mere transaction itself. *Sayers v. Texas Land & Mortgage Co.,* 78 Tex. 245 (14 S. W. 578); *Coaldale Coal Co. v. State Bank,* 142 Pa. St.

288 (21 Atl. 811); *Baker v. Naglee,* 82 Va. 876 (1 S. E. 191); *Persse v. Willet,* 1 Robertson, (N. Y.) 132.

Turning to the evidence, we find nothing that indicates an intent on the part of either Morse or his wife to defraud their creditors. The intent was to prefer Christensen and Wood to their other creditors. This it was lawful for them to do; and, while all their property was exhausted, there is no pretense that the value of the property exceeded, or even equaled, the debts secured and paid. This being true, it is immaterial what form was adopted to accomplish the purpose. In equity, form is immaterial. Equity looks to the intent and purpose with which a thing is done — to the real transaction — and, while scrutinizing an insolvent debtor's dealings with his property, it will look beyond and through forms, however regular and lawful they may appear to be, for the purpose of discovering the real transaction, and will afford relief when a creditor's rights have been unlawfully affected. It will never declare a legal transaction illegal because unusual means may have been adopted in the performance of the transaction.

The judgment of the lower court is reversed and the cause remanded, with instructions to enter judgment for the appellants.

GORDON, C. J., and ANDERS, DUNBAR and REAVIS, JJ., concur.