[No. 20565.    Department Two.    August 12, 1927.]

HARRY J. SIEGEL et al., Appellants, v. JACOB KRACOWER et al., Respondents.[1]

[1] EVIDENCE (226, 227)—WEIGHT AND CONCLUSIVENESS—CREDIBILITY OF WITNESSES. The trial court is not bound by the uncontradicted testimony of an interested party but may reject it if unworthy of belief as improbable or inconsistent.

[2] FRAUDULENT CONVEYANCES (92, 95)—TRANSACTIONS BETWEEN RELATIVES—INTENT OF DEBTOR—EVIDENCE—SUFFICIENCY. Findings that a transfer was made to a relative in anticipation of a judgment and in fraud of creditors are sustained, where it appears that the grantee was in sympathy with the grantor's effort to defeat enforcement of the judgment, and that the debtor's property was to be sold, and after certain payments, the balance was to be turned over to the debtor.

[3] SAME (82)—EVIDENCE—BURDEN OF PROOF. The party seeking to set aside a transfer on the ground of fraud has the burden of proving the fraud which vitiates the transaction.

[1]Reported in 258 Pac. 493.

20—144 WASH.

[4] SAME (32)—PREFERENCES TO CREDITORS—INTENT TO DEFEAT
OTHER CREDITORS. An insolvent's preference of a creditor must
be free from concealment or bad faith, and will not be upheld
where the creditor had notice that the debtor's intent in the
transfer of all his property was to forever defeat the payment
of an anticipated judgment, and the grantee was a relative, in
sympathy with the debtor's motives, and the debt preferred
was used as a colorable consideration to protect the debtor's
property, tainted with a secret trust for the debtor.

Appeal from a judgment of the superior court for
King county, Moriarty, J., entered November 13, 1926,
upon findings in favor of the defendants, in an action
to quiet title. Affirmed.

*Preston, Thorgrimson & Turner,* for appellants.

*Tucker, Hyland & Elvidge* and *Mary H. Alvord,* for
respondents.

HOLCOMB, J.—This is an equitable action, commenced
by appellants to quiet title to real estate in King
county. The complaint in the case alleges ownership
in appellants and that respondents claim to have some
right, claim, lien, title or interest therein adverse to
appellants; and prays that whatever right, claim, lien,
interest or title the respondents claim be required to
be set forth by them, and that the title of appellants be
declared and adjudged good and valid, and superior,
and respondents forever enjoined from asserting any
claim thereto, and for other equitable relief.

For answer, respondents affirmatively allege that,
on and prior to January 7, 1924, one Shallit and wife
were the owners of the property described in the com-
plaint and that, on and prior to that date, there was
pending, in the superior court for King county, a cer-
tain cause of action, wherein respondent Jacob Krac-
ower was plaintiff and the Shallits, husband and wife,
were defendants, upon certain promissory notes exe-

cuted by Shallit to Kracower, and that thereafter, on
January 9, 1924, a verdict in favor of respondent
Kracower against the Shallits, in the sum of $6,706,
was rendered, and thereafter, on February 2, 1924,
judgment for the above amount, with costs, was en-
tered against the Shallits in the records of the superior
court for King county. It was further alleged that, in
anticipation of the judgment in the above matter, and
with intent to avoid and evade payment thereof and to
conceal and place the real property out of the reach of
their creditors, and especially these creditors and de-
fendants, the Shallits caused an assignment to appel-
lants of their interest in a contract for the sale of the
real property and a deed to the property to be execu-
ted, both dated January 7, 1924, which assignment was
recorded in the auditor's office of King county on
January 10, 1924, and which deed was recorded on
May 9, 1925.

It was also alleged that appellants took the assign-
ment of the contract and the deed to the real prop-
erty involved, knowing the pendency of the suit and
the imminence of the verdict and judgment, and to
aid the Shallits in the scheme to defraud respond-
ents; and that appellants did not give any valid or
legal consideration for the making, execution or de-
livery of the assignment of contract or the deed; and
appellants hold the same and hold title to the property
in trust for the Shallits. It is then alleged that the
judgment above mentioned is a valid and subsisting
lien against the real property involved, prior to any
right, title or interest of appellants in the property.
Respondents then pray a decree, decreeing and adjudi-
cating the lien of the judgments described in the com-
plaint to be prior to any right, title or interest of
appellants in the real property described, and that any
right, title or interest of appellants in the property be

held subject, subordinate and inferior to the lien of the judgment.

There was another small judgment also set out in another affirmative defense, which, after the answer was interposed and at the trial, was shown to have been paid and satisfied by appellants. It is, therefore, not involved in this controversy.

Appellants replied, denying the allegations of the affirmative answer that, in anticipation of the verdict and judgment referred to and with intent to avoid and evade payment thereof and to conceal and place the real property out of the reach of their creditors, and especially these respondents, the Shallits caused an assignment of their interest in a contract of sale and a deed to the real property to be made, executed and delivered to appellants; denied that appellants took the assignment of contract and the deed, knowing the pendency of the suit and the imminence of the verdict and judgment and to aid the Shallits in the scheme to defraud respondents, and that appellants gave no valid or legal consideration for the assignment and deed, and that appellants held the property and the title to it in trust for the Shallits; and denied that the judgment referred to is a prior and superior lien upon the property in favor of respondents as against appellants.

Upon these issues, the case was tried by the court and evidence adduced. The trial court made findings of fact sustaining every allegation of the affirmative answer upon which the cause was tried, and a conclusion of law that respondents are entitled to a decree, decreeing ownership of the property involved to be still in Shallit and wife, subject to the lien of the judgment in favor of respondents.

A further finding was made that appellants had

loaned to the Shallits at various times prior to 1921 various amounts, aggregating $850, which indebtedness had never been paid.

Another finding made was to the effect that, at the time of the purported transfer of the property involved by the Shallits to appellants, the same was subject to, and the contract was assigned as collateral for, a certain loan theretofore secured by the Shallits from the Industrial Loan & Investment Company, afterwards known as the Berry Company, and the payments made by the purchaser under that contract were made to the Industrial Loan & Investment Company and to its successor for the benefit of, and in repayment of, the loan theretofore made by the Shallits, until the month of December, 1925, when a quit-claim deed was made and delivered by the Berry Company to A. B. Shallit, which deed was duly recorded in the auditor's office of King county.

The oral testimony introduced in this case consisted of that of Shallit and wife, appellant Siegel, and one Bean, a notary public who took the acknowledgment of the assignment of contract and of the deed, all of whom were introduced by appellant. They were all subjected to searching cross-examination. Upon cross-examination of appellant and of the Shallits, many admissions were made from which inferences unfavorable to appellants were inevitable.

The findings of the trial court are complained of by the appellants upon the ground that they are contrary to the evidence, and that there is no evidence in the case sustaining them.

From the testimony of the witnesses, it appears that A. B. Shallit and Jacob Kracower were once partners. During their partnership, Kracower became the owner of certain notes of Shallit and wife.

When the partnership was wound up, Shallit contended that it was agreed that those notes be cancelled, though, in fact, they were not surrendered. A bitter quarrel arose between them over Shallit's efforts to get the notes away from Kracower, resulting in violence, physical encounters, and certain civil and criminal proceedings in court. Afterwards, Kracower sued the Shallits on the notes in question and recovered judgment on them, the trial commencing on January 8, 1924, the day upon which the assignment of contract and the deed in controversy were delivered and the day after they were executed by the Shallits to appellants. On the next day, the jury in the suit upon the notes rendered a verdict in favor of Kracower. This is the judgment referred to in the affirmative answer, findings and judgment herein. This is the judgment which this suit was brought to quiet title against as a lien. Appellant, the husband, is a brother-in-law of A. B. Shallit. The evidence of the witnesses also discloses the most intense bitterness and hostility between the Shallits and Kracower. The evidence is certainly sufficient, as a whole, to sustain the only inference that the Shallits had a firm determination, fully sympathized with by appellants, that respondents should never secure any money on the judgment based on the notes therein involved.

[1] Although appellants contend that there is no evidence, or inference from the evidence, to sustain the findings of the trial court, the rule is well established that the trial court is not bound by the uncontradicted testimony of an interested party, but may reject the same if unworthy of belief by reason of its improbability or inconsistency. *Gosline v. Dryfoos*, 45 Wash. 396, 88 Pac. 634; *Brown & Bros. Mercantile Co. v. Sherrod*, 53 Wash. 132, 101 Pac. 481.

As was observed in the last cited case, the trial court saw appellants, heard them testify, was in a position to pass upon their credibility, and evidently rejected their statements as unworthy of belief.

Furthermore, there is an additional fact in this case militating against appellants, in that appellant, the husband, admitted that he knew of the pendency of the suit by Kracower against the Shallits, that it was on the verge of being tried, and that the Shallits contended that they did not owe the notes in controversy in that suit and should not be compelled to pay anything on them. He also admitted knowing of the intense hostility existing between the Shallits and Kracowers. He further admitted knowing that the property in question in this suit was absolutely all the property of the Shallits. The Shallits also admitted that the property in question was all their property, except a little household furniture.

[2] Appellants contend that the transaction between them and the Shallits was, in the first instance, a satisfaction of a pre-existing debt, and, secondly, a sale of the property for an adequate consideration. It is argued that, since the Shallits owed appellants $850 principal and $15 interest, at the time of the transaction, which was to be satisfied by appellants, and the payments on the contract to the Berry Company assumed to the amount of $960, the small judgment of $37 also assumed, which was afterwards paid, appellants also assuming an obligation of $230 in favor of one Oelschlarger, and the difference of $330 paid in cash to the Shallits, there was a sufficient and valid consideration paid for the property which should sustain the transfer. The contract was presumably worth the amount to be paid thereon by the contract debtor, the sum of $1,740. Hence appellants assert that the

amount paid and assumed by them to Oelschlarger and the Shallits, aggregating some $1,462, allowing a reasonable discount, is a fair and adequate consideration. But there is also evidence by appellant, the husband, that he was first to get his money out of the property, and then pay the small judgment and the Oelschlarger claim of $230, and Shallit was to get what was left. Shallit testified that the Oelschlarger claim had not been paid, and was not to be paid under his arrangement with appellants unless appellants sold the property. This evidence abundantly justifies the court in finding that the transaction was not an absolute sale, and that, since Shallit was to get what was left after certain claims had been paid, including those of appellants, there was a secret trust on the part of appellants in favor of the Shallits.

[3] Appellants assert, and respondents deny, that the burden of proving the fraudulent intent alleged was upon respondents.

We think that the contention of appellants is correct. Whichever party seeks to set aside a transfer of property on the ground of fraud has the burden of proving the fraud which vitiates the transaction. *Samuel v. Kittenger,* 6 Wash. 261, 33 Pac. 509; *Straw-Ellsworth Mfg. Co. v. Cain,* 20 Wash. 351, 55 Pac. 321; *Troy v. Morse,* 22 Wash. 280, 60 Pac. 648; *Zent v. Gilson,* 52 Wash. 319, 100 Pac. 739; *Cashmere State Bank v. Richardson,* 105 Wash. 105, 177 Pac. 727.

[4] The last cited case of the foregoing list and others are also relied upon to the effect that the law of this state is well settled that an individual debtor in failing circumstances may prefer one creditor over another, even to the exhaustion of his property, if the value of the property given is not so grossly in excess of such creditor's claim, or the consideration is not so

grossly inadequate that it is palpably a fraud upon all other creditors. But, in the last cited case and in nearly all of our cases, it is stated that the transaction must be free from concealment or bad faith.

In this case, under the evidence and the findings of the trial court, we cannot find that the transaction was free from bad faith. While it was made apparently openly, it was made with the knowledge of both the grantors and grantees that an action for a large amount upon notes of hand given by the Shallits was about to be tried, and both of the parties desired that the Shallits would not have to pay any judgment on the notes or any part of it. The case was to be tried on the same day the transfers were delivered to appellants; the judgment was entered the next day. Appellants knew of these facts. They were in very great accord and sympathy with the Shallits.

We confess that this case has many points of resemblance with the case of *National Surety Co. v. Udd*, 65 Wash. 471, 118 Pac. 347, statements made in which are relied upon by both parties hereto. In that case, as in this, there was an alleged antecedent debt and a further alleged substantial payment entering into the consideration for the transfer of the property. In that case, however, the trial judge found in favor of the good faith of the transfer. There, as here, the transfer was made to a relative, a cousin; while here the relative was a brother-in-law. There, as here, there was pending a suit for a large amount against the grantors which soon resulted in a judgment. But there, the testimony of both the grantors and the grantees was to the effect that the grantees knew nothing of the pending suit. Judge Ellis, writing the opinion for the court, adverted to that apparently unlikely testimony and also to other circumstances in the

case, stating that they present a "remarkable congeries of coincidence," all pointing to the grantor's intention to get all of his property out of his hands before the surety company's suit against him was tried. He later also discussed other strange and suspicious circumstances connected with the transaction. It is apparent, upon a close study of the case, that this court desired to annul the transaction, but was unable to leap the hurdle of the finding of the trial court in favor of the grantees that they were innocent in the transaction, doubtless under the usual rule that the trial court saw and heard the witnesses and was better able to judge of their credibility. A very thorough and able discussion of the law as to fraudulent conveyances is made in the opinion in that case. The rule is there approved that, even where a grantee pays full consideration for the property, if he takes with knowledge of the grantor's fraudulent intent, he takes subject to the claims of other creditors, citing *O'Leary v. Duvall,* 10 Wash. 666, 39 Pac. 163, and Bump, Fraudulent Conveyances (4th ed.), § 182. It was also said:

"This rule, however, applies with its full force only in cases of a conveyance without consideration, or to a purchaser for a cash consideration paid at the time of conveyance, and not to a case where the consideration is wholly or mainly an antecedent debt. It is the established law in this state that an insolvent debtor may prefer one or more of his creditors even if it exhausts the whole of his property to do so. [Citing cases.] But it must be done in good faith. The debt paid must be real, the payment actual, the consideration adequate. It must not be designed to prevent other creditors ever being paid. The preferred debt must not be used as a colorable consideration to protect the debtor's property from other claims or to delay or hinder their enforcement. The transfer must not be tainted with any secret trust for the debtor. Bump, Fraudulent Conveyances (4th ed.), §§ 172, 173, 174."

The last observations made above, in our opinion, determine this case. Here the grantors were in fear of a large judgment which they claimed was unjust, and of which they undoubtedly resolved they would never pay any part. Appellants, their grantees and relatives, knew of the pendency of the action and the imminence of the trial; of the hostility of their grantors toward the plaintiff in that action; of their insistence that they did not honestly owe the debt involved therein, and that they never should be required to pay it, or any part of it. The property conveyed to appellants was all the property the Shallits owned.

It was held in *O'Leary v. Duvall, supra:*

"Where a debtor conveys all his property for the purpose of defrauding his creditors, and the grantee takes with knowledge of the intent to defraud, the fact that a full cash consideration was paid for the property will not relieve it from liability to the claims of creditors of the grantor." [Syllabus.]

All of the authorities agree that, where a transfer is made under such conditions as exist here, although a valuable consideration was paid or agreed to be paid, the purchase must have been in good faith and without any design to hinder, delay or defraud creditors, and especially certain creditors. *Holt Mfg. Co. v. Thomas,* 69 Wash. 488, 125 Pac. 772; *Chapman v. Critzer,* 110 Wash. 424, 188 Pac. 412.

It was said by the supreme court of the United States in *Clements v. Moore,* 6 Wall. (U. S.) 299:

"A sale may be void for bad faith though the buyer pays the full value of the property bought. This is the consequence, where his purpose is to aid the seller in perpetrating a fraud upon his creditors, and where he buys recklessly, with guilty knowledge."

See, also, *State to Use of Salomon v. Mason,* 112 Mo. 374, 20 S. W. 629, 34 Am. St. 390, and case notes beginning p. 395.

We are convinced that, under the facts and circumstances shown in this case, the findings, conclusions and judgment of the trial court cannot be disturbed.

The judgment is therefore affirmed.

MACKINTOSH, C. J., TOLMAN, PARKER, and FRENCH, JJ., concur.