[No. 9658-1-III. Division Three. May 3, 1990.]

JAY PATTERSON, *Respondent,* v. KENNEWICK PUBLIC HOSPITAL DISTRICT NO. 1, *Petitioner.*

*Brian Iller* and *Raekes, Rettig, Osborne, Forgette & O'Donnell,* for petitioner.

*Leland Kerr* and *Evans & Kerr, P.S.,* for respondent.

THOMPSON, J.—Kennewick General Hospital (KGH) dishonored a warrant it had issued to Jay Patterson for goods he furnished the hospital pursuant to a purchase order. Mr. Patterson then filed this action for wrongful dishonor against KGH in district court. The District Court found Mr. Patterson obtained the purchase order through misrepresentation. It entered judgment in favor of KGH. The Superior Court reversed, and we accepted discretionary review. We hold the District Court's findings are not supported by substantial evidence, and we therefore remand to the District Court for the entry of findings and judgment in accord with this opinion.

Mr. Patterson is a sales representative for Castle Corporation, which manufactures sterilizers for hospitals. In 1986, he sold two sterilizers to Kennewick General Hospital. When the hospital installed the sterilizers in November 1986, it discovered that Castle had shipped the emergency room sterilizer without the stainless steel side panels that

hang on the framework of the machine and cover its engineering parts.

Charles Telehala, KGH's materials manager, contacted Mr. Patterson about the problem. Mr. Patterson called Castle and spoke with Freda Bolt, the West Coast correspondent. He testified Ms. Bolt told him that it would take 30 to 60 days to deliver the missing side panels. Mr. Patterson relayed this information to Mr. Telehala, but also told him, based upon his experience, that it could be longer. He later testified that the normal delivery time for any piece of equipment from Castle is 90 to 120 days.

Mr. Patterson suggested that if the hospital did not want to wait, the panels could be made locally. Mr. Telehala asked him to take care of it, since it was Castle's mistake that made the action necessary. Mr. Patterson agreed, and offered a 90–day warranty on the panels, "just to be sure they're right". Mr. Telehala issued him a purchase order dated November 4, for $1,300 plus $101.40 tax, for a total of $1,401.40. The purchase order did not specify a time for delivery, but Mr. Patterson stated "the idea was that we would be able to get the panels faster than from Castle Company." Mr. Patterson also secured a credit for the hospital from Castle for $1,326.

That same month, Mr. Patterson submitted an order for the side panels to Eastside Heating and Air Conditioning of Bellevue, to be made according to specifications which Castle had sent him. Eastside had the panels ready in approximately 3 weeks. However, when Mr. Patterson called KGH to talk to Mr. Telehala, he was advised by the secretary that Mr. Telehala no longer worked there.

Mr. Patterson testified he called several times, told the secretary the panels were ready, but was told by her to "hang on", that there was no materials manager, and they were "getting this thing settled". At trial, the hospital administrator testified that he dismissed Mr. Telehala on December 12, 1986. At the time of trial, Mr. Telehala was

under investigation by the State Auditor's office for transactions involving use of the hospital's credit and purchasing power for his own purposes.

Mr. Patterson said that finally he had the panels delivered to the hospital in February 1987, and paid Eastside $1,333 for them out of his own funds. The hospital sent him a warrant dated April 22, 1987, for $1,404.

Jack Beebe began working for KGH as materials manager on March 25, 1987. On April 27, 1987, Allan Streeter, the hospital's director of finance, came to Mr. Beebe with the warrant to Mr. Patterson and asked him why they were paying Castle's sales representative with a warrant made out to him personally. Mr. Beebe investigated and found that the panels were delivered in a box that originally had been addressed to Group Health. He became suspicious and ordered the warrant canceled. Subsequently, he discovered that the purchase order for the panels was generated from the hospital's inventory control system which is used for recurring purchases of consumable supplies. Further, he testified, "[t]he dollar limit was exceeded. The supporting documentation was not there. There were no terms and conditions attached to the purchase order."

On April 30, 1987, Mr. Patterson contacted Michael Fraser, the hospital's chief administrator, about the dishonored warrant. According to Mr. Fraser, Mr. Patterson recounted to him his conversation with Mr. Telehala at the time the purchase order was issued. Mr. Patterson said he had the panels fabricated locally as a service to the hospital, *i.e.*, they were more readily available that way and were comparable to what the hospital would have gotten direct from the manufacturer. Mr. Patterson told Mr. Fraser that the hospital would not have received the equipment from Castle for up to 90 to 120 days.

On May 11, 1987, Mr. Fraser sent Mr. Patterson a letter detailing his concerns about the side panels. He requested a copy of the specifications for the panels with a letter from the manufacturer that they were fabricated according to the specifications; a warranty of the side panels by Castle;

and information regarding the delivery time on the panels from Castle as compared to the time required to have them independently fabricated. When Mr. Fraser spoke with Mr. Patterson by telephone on May 22, Mr. Patterson told him the hospital would get the specifications when it paid for the panels.

The hospital also contacted Castle. The record contains two letters from Castle, admitted over Mr. Patterson's objections they were hearsay. Exhibit 9 is dated July 16, 1987, and states: "During the Fall of 1986 we were able to ship these panel packages within 30 days after receipt of an order." Exhibit 11 is dated August 14, 1987, and reads:

> We have inspected the panels which you forwarded. They were not manufactured by the Castle Company. We also believe they would not fit properly without additional modification and hardware. The latter includes brackets, bolts, etc. which were missing completely.

On cross, Mr. Beebe admitted he did not have a good idea as to the specifics of the alleged nonconformance. Mr. Patterson testified the needed modifications were not critical. They entailed drilling holes in the panels that lined up with those on the sterilizer and procuring the hardware to attach the panels.

Based on the foregoing evidence, the District Court found:

### II.

> [T]he plaintiff represented to the defendant that the panels could not be delivered in less than about 120 days. The plaintiff then stated that he could have the panels fabricated locally and would be able to deliver them in 30 days. He also represented that the panels would be just as good as those manufactured by Castle. Charles Telehala, the purchasing agent of the defendant, agreed to purchase the panels from the plaintiff based on the foregoing representations . . ..

### III.

> The panels . . . were not shipped in 30 days as represented, but were shipped in February of 1987. The panels, based upon inspection by other representatives of Castle Corporation, do not fit the sterilizer and need modification, as well as other equipment and are, therefore, nonconforming to the representations of the plaintiff.

## IV.

In November, 1987 [*sic*], panels were available from Castle Corporation and could have been shipped in 30 days had they been re-ordered.

Are the District Court's findings supported by substantial evidence? KGH contends they are, citing: (1) exhibit 9, (2) exhibit 11, and (3) alleged inconsistencies which KGH argues support the District Court's rejection of Mr. Patterson's testimony.

1. Exhibit 9

As noted, exhibit 9 is a letter from Castle regarding delivery time. It was obtained after this action was commenced. The letter states that the panels could have been shipped within 30 days of receipt of the order. The letter is hearsay. It is an out-of-court statement offered to prove when Castle could have delivered the panels.

KGH responds that Mr. Patterson opened the door to this evidence when he testified that Ms. Bolt had told him Castle could ship in 30 to 60 days, which is itself hearsay. We do not agree.

"Whether the statement is hearsay depends upon the purpose for which it is offered. If it is offered to prove the truth of the matter asserted, the evidence is hearsay. If it is offered for some other purpose, it is not." 5B K. Tegland, Wash. Prac., *Evidence* § 333, at 19 (1989). Out-of-court statements introduced to show the effect on the listener regardless of their truth are not hearsay. 5B K. Tegland, § 336, at 34. Here, Ms. Bolt's statement was offered to prove its effect on Mr. Patterson, *i.e.*, he and Mr. Telehala used this information in deciding whether to secure the panels locally or order them from Castle. It was *not* offered to show that delivery would in fact take 30 to 60 days. Mr. Patterson's testimony was admissible evidence, not hearsay.

Accordingly, KGH fails in its argument that Mr. Patterson "opened the door" to the hearsay contained in exhibit 9. That rule applies only when the opposing party has first introduced inadmissible evidence. 5 K. Tegland, Wash. Prac., *Evidence* § 11, at 41 (1989). Exhibit 9, which

relies on the credibility of an out-of-court declarant who is not subject to cross examination, cannot be used to support the District Court's findings.[1] Without this exhibit, there is no properly admitted evidence in the record to contradict Mr. Patterson's testimony that he was told delivery of the panels from Castle would take 30 to 60 days.[2]

2. Exhibit 11

Exhibit 11 is a letter from Castle regarding the need for modifications and additional hardware before the panels supplied by Mr. Patterson would work on the sterilizer. The exhibit is hearsay, but again KGH argues Mr. Patterson opened the door to its admission when he testified that the panels were comparable to Castle's and offered into evidence the written specifications Castle sent him.

Specifically, KGH asserts: "[I]f Patterson's testimony as to specifications was not submitted to prove that the panels would fit, the District Court's judgment of nonconformity is properly supported by a lack of proof that the panels *would* fit." Reply Brief of Petitioner, at 14. However, Mr. Patterson did not have the burden of proving the panels fit. KGH asserted nonconformity as a defense. Thus, it was up to KGH, not Mr. Patterson, to come forward with evidence that the panels did not conform. The hearsay letter was not proper evidence, and the court should not have considered it.

---

[1]KGH argues that Mr. Patterson waived his objection to the exhibit. When the exhibit itself finally was offered into evidence, Mr. Patterson's counsel stated he had no objection: "I think we've talked all the way around it. I think we ought to get it in before the court." He had previously objected each time a witness had referred to the contents of the exhibit. The quoted comment merely expressed counsel's opinion that the substance of the exhibit had already been admitted. It does not amount to a waiver of his hearsay objection.

[2]In any event, the exhibit itself is not inconsistent with Mr. Patterson's testimony. The letter says that the panels could have been *shipped* within 30 days of the *receipt of the order*. If one adds ordering and shipping time to the 30 days, then the exhibit does *not* contradict Mr. Patterson's estimate of 30 to 60 days.

### 3. Mr. Patterson's Credibility

KGH relies on the rule that "the trial court is not bound by the uncontradicted testimony of an interested party, but may reject the same if unworthy of belief by reason of its improbability or inconsistency." *Siegel v. Kracower,* 144 Wash. 609, 614, 258 P. 493 (1927). *See also Unosawa v. Wright,* 44 Wn.2d 777, 779, 270 P.2d 975 (1954), in which the court held that the plaintiff's claim was "inherently improbable".

We have reviewed the record and hold that the inconsistencies asserted by KGH either do not exist or are immaterial. For example, KGH contends Mr. Patterson testified that he picked up the panels from Eastside in December, then later stated that he picked them up in March. In fact, what Mr. Patterson said was that the notation of a delivery date of "11–21" on the Eastside invoice referred to the date that Eastside estimated that it would have the panels ready, not the actual delivery date.

KGH also makes much of Mr. Patterson's testimony that he personally delivered the panels to KGH. Later, he agreed that he was mistaken and that he had shipped them through Viking Shipping during February. Since KGH was defending on the basis of a late rather than a mishandled delivery, Mr. Patterson's admission is of little significance.

In its brief, KGH argues that Mr. Patterson, in his conversation with Mr. Fraser, said that he told Mr. Telehala it would take Castle 90 to 120 days to deliver. We have reviewed Mr. Fraser's testimony. He states only that Mr. Patterson told *him* that it would have taken 90 to 120 days. In his direct testimony, Mr. Patterson said that he told Mr. Telehala it was his experience that deliveries from Castle took longer than the 30 to 60 days represented by Castle. In any event, KGH offered no proof that either statement by Mr. Patterson was false.

*Siegel* is distinguishable on its facts. There, the plaintiff's action was based on his claim that his debtors had transferred their only asset to the defendant in order to avoid paying a judgment obtained by plaintiff against them. The

court noted that in the cross examination of the debtors and the defendant, many admissions were made from which unfavorable inferences were inevitable. *Siegel,* at 613. Specifically, the evidence was sufficient to sustain an inference that the debtors had a firm determination, fully sympathized in by defendant who was the brother–in–law of the debtors, that plaintiff should never secure any money on the judgment he had obtained against them. *Siegel,* at 614. In contrast, the alleged inconsistencies here either do not exist or are immaterial. Mr. Patterson's testimony does not create inferences unfavorable to his position, as did the testimony of the defense witnesses in *Siegel.*

In sum, KGH did not meet its burden of proving Mr. Patterson misrepresented material facts. There is no evidence to support the findings of the District Court to the contrary. The cause is remanded to the District Court for entry of findings and judgment in favor of Mr. Patterson on his claim of wrongful dishonor.[3] Mr. Patterson is awarded attorneys fees on appeal in the amount of $6,635.25. RCW 62A.3–515(1).[4]

MUNSON, C.J., and SHIELDS, J., concur.

---

[3]The Superior Court entered its own findings. Since it was sitting as an appellate court, its authority was limited to reversing, affirming, or modifying the District Court or remanding the case back to that court for further proceedings. RALJ 9.1(d).

[4]That statute provides for reasonable attorney fees as part of the damages payable to the holder of a dishonored check who is forced to go to court to secure payment.