[No. 10678.   Department Two.   May 7, 1913.]

## HOLT MANUFACTURING COMPANY, *Appellant*, v. W. J. BENNINGTON *et al.*, *Respondents.*[1]

FRAUDULENT CONVEYANCES—PREFERENCES—EVIDENCE OF BONA FIDES —SUFFICIENCY. Findings that a transfer by an insolvent to a creditor, of property of a value largely in excess of his claim, was not fraudulent as to other creditors, are sustained, where it appears from the uncontradicted evidence of five witnesses that the transfer was made in trust under a contemporaneous oral agreement for the purpose of preferring, in a specified order, the grantee and certain other *bona fide* creditors, who were consulted and consented thereto, and that the trustee sold the property at its fair value and applied the proceeds in accordance with the trust agreement; even though the preferred creditors knew that their claims would exhaust the property; since a failing debtor may prefer favored creditors to the exclusion of others.

Appeal from a judgment of the superior court for Adams county, Kauffman, J., entered June 18, 1912, upon findings in favor of the defendants, after a trial on the merits before the court without a jury, dismissing an action to vacate sales of personal property. Affirmed.

*W. W. Zent (J. E. McAndrew, of counsel), for appellant.*
*Lovell & Davis, for respondents.*

ELLIS, J.—In this action the plaintiff sought to have set aside as fraudulent and void two bills of sale of personal property executed on October 2 and October 3, 1911, and a conveyance of eight lots in certain additions to the town of Ritzville, executed on the 3d day of October, 1911, by the defendants Thomas to the defendant Bennington, upon the ground that these transfers were all in fraud of the plaintiff and intended to hinder the collection of debts owed by the defendants Thomas to plaintiff. In the fall of 1911, the plaintiff brought an action against the defendants Thomas upon two promissory notes and an open account, aggregat-

[1]Reported in 132 Pac. 30.

ing $5,000, and sued out a writ of attachment against the property of the defendant Thomas, upon the ground that they had assigned, secreted and disposed of their property with intent to delay and defraud their creditors. Upon motion of the defendants in that action, the attachment was dissolved, the lower court holding that it was wrongfully issued. Upon an appeal from the order dissolving the attachment, that order was by this court reversed in *Holt Mfg. Co. v. Thomas*, 69 Wash. 488, 125 Pac. 772. The cause was, of course, submitted to the trial court and reviewed here entirely upon affidavits.

Pending the appeal in that case, the defendant Bennington sold the property which had been transferred to him by the above mentioned bills of sale, and applied the proceeds of the sale in payment of an indebtedness due to him from the defendants Thomas, and, also, in payment of indebtedness due to Pioneer National Bank of Ritzville. In the meantime, the plaintiff prosecuted its original action against the defendants Thomas to judgment, which was entered on January 30, 1912, and thereupon brought this action to subject the property to their judgment, praying that in case the property had been disposed of, a personal judgment be rendered against the defendant Bennington. Issues were joined, and the cause was tried to the court without a jury.

The findings of the court were substantially as follows: That on January 30, 1912, the plaintiff recovered a judgment against the defendants Thomas in the superior court of Adams county, in the sum of $5,222.95 and costs; that execution was issued thereon, and within thirty days returned by the sheriff *nulla bona;* that the plaintiff's judgment remains wholly unsatisfied; that on October 2, 1911, by bill of sale, the defendants Thomas transferred to the defendant Bennington the property described in the plaintiff's complaint; that on November 27, 1911, the defendant Bennington took possession of the property so transferred and kept possession thereafter; that at the time of the trans-

fer of the property, the defendants Thomas owed the following sums: to the defendant Bennington, $5,245; to the Pioneer National Bank, a corporation, $15,083.10; to Bank of Lind, a corporation, $12,000; that the consideration for the transfer of the property to the defendant Bennington was that Bennington should take the property, care for and manage the same to the best of his ability, and that when conditions were favorable he should sell it at public or private sale, and that the proceeds should be applied, first, to the payment of the claims of the defendant Bennington; second, to the payment of the claim of the Pioneer National Bank; and third, if any sum remained, it should be turned over to the Bank of Lind in payment of its claim; that the transfer was an absolute transfer for the purposes above specified, and was not a mortgage; that, under the transfer, possession was taken of all of the property, and on December 20, 1911, a public sale was had; that all the property was sold for $13,704.97, except one caterpillar engine which still remains in the possession of the defendant Bennington; that the total expenses of caring for the property and paying the taxes thereon were $487.66; that the entire net amount received was applied as directed, first, to the payment of the claims of the defendant Bennington, and the remainder was turned over to the Pioneer National Bank in settlement of its claim; that the caterpillar engine is being held for private sale, and the amount received thereby will be turned over to Pioneer National Bank in further payment of its claim; that the defendant Bennington managed the property to the best of his ability, and that the proceeds from the sale of the property was a fair sum and the actual cash value thereof; that the indebtedness from the defendants Thomas to the defendant Bennington and the Pioneer National Bank and to the Bank of Lind was a *bona fide* indebtedness for the amounts specified. The court concluded, as a matter of law, that the plaintiff's action should be dismissed, and that the defendants should have judgment against the plaintiff for their

costs. Judgment went accordingly, and the plaintiff appealed.

In reversing the order dissolving the attachment we were, as the opinion shows, largely influenced by the fact that the respondents Thomas were insolvent; that Bennington knew that fact; that the conveyances to Bennington were absolute in form, expressing no trust for the banks; that the property conveyed to Bennington was of a value much greater than the indebtedness held by him; that Bennington was very friendly with the respondents Thomas, and advised them to make a conveyance to him beyond that which would reasonably satisfy his claim; that he had made an offer to the president of the Bank of Lind to share *pro rata* with it in the payment of its claim, upon condition that that institution would aid in reinstating the respondents Thomas upon Bennington's farm; that both the respondents Thomas and the respondent Bennington had shown a desire to delay the appellant in the collection of its claim as well as to prefer Bennington and other creditors; and that the affidavit of the attorney for the respondents Thomas, to the effect that the sale was absolute and so intended by the parties, failed to state any facts indicating the nature of the claimed trust in favor of the banks.

The only question for our determination on that appeal was whether there existed sufficient grounds for the issuance of the attachment. Our decision of that question in the affirmative is not conclusive upon the parties here, nor upon us, as to the issue of good faith in the transfers here presented. The evidence is now before us upon the testimony of witnesses, and not upon mere affidavits. A careful reading of that evidence materially modifies the impression gathered from the affidavits. We are satisfied that the evidence, by a fair preponderance, sustains the findings of the trial court. To render the transfer fraudulent it must appear, not only that the respondents Thomas were actuated by a fraudulent design, but that the respondent Bennington had notice of

and participated in that design.  We are not convinced that either of these things was established.  The evidence shows that the respondents Thomas tried to secure an extension of time from the appellant upon their indebtedness to it; that when this failed and an action was threatened, they conceived the design of preferring the respondent Bennington, and after a consultation with Bennington and with their attorney, they extended this design to preferences, next, of the Pioneer National Bank of Ritzville, and then of its subsidiary, the First National Bank of Lind; and that they then knew that these preferences would consume all of their property; that with this design and for this purpose, the bills of sale and the real estate deed transferring their property to Bennington were made; that thereafter and on the same day on which the last bill of sale was executed, a conference was had with one O. H. Greene, active manager of the Pioneer National Bank of Ritzville and vice president of the First National Bank of Lind, in which he, on behalf of those institutions, agreed to an absolute transfer to the respondent Bennington of all of the property of the respondents Thomas, with the understanding that Bennington should care for the property and sell it to the best advantage possible, and apply the proceeds, first, to the payment of the debts due to Bennington; second, to the payment of the debts due to Pioneer National Bank; and third, to the payment of the debts due to the First National Bank of Lind.

Such was the clear, positive and uncontradicted testimony of the attorney, who advised these parties and drew the papers, and of Bennington, both of the respondents Thomas, and of Greene.  We think that the evidence fairly shows that the moving purpose of all of these parties, Bennington, Greene and the respondents Thomas, was to pay *bona fide* debts due to these creditors in the order mentioned.  Clearly the dominant purpose of the preferred creditors was to secure a preference.  There was no evidence of any independent intention to defeat other claims, except in so far as such pref-

erence would necessarily have that effect. The situation would have been entirely different had there been any understanding that the respondents Thomas were to retain any interest in the property or were to receive any of its proceeds. All of the positive evidence was clear and emphatic to the contrary. The evidence shows that all of the property transferred, with the exception of the one caterpillar engine, sold for its fair value, and that the proceeds have been applied in exact accordance with the trust under which Bennington claims to have taken it. The evidence now before us makes it plain that the value of the property transferred was much less than that indicated in our former opinion. Its sale for less than the debts negatives the then apparent inadequacy of consideration for the bills of sale.

"The mortgage given to secure nineteen hundred and ten dollars and forty cents included all Sengfelder's property, but when it was sold by the receiver fourteen hundred and sixty-three dollars and seventy-five cents was the full amount received therefor. This, in our opinion, purges the transaction of every badge of fraud." *Marquam v. Sengfelder,* 24 Ore. 2, 32 Pac. 676.

The evidence also supplies what was lacking in the affidavits then before us as to the terms of the trust and the actual contemporaneous agreement between all of the parties preferred and the respondents Thomas. The adequacy of the consideration and the terms of the preferential trust being, as we now think, clearly established, the other circumstances mentioned in our review of the attachment proceedings lose their controlling force. While the evidence showed that Bennington knew that suit against the respondents Thomas was threatened, and knew that they desired to pay him and the banks before their property could be subjected to levy or attachment, and knew that by the proposed preference there would be no property remaining from which to satisfy the appellant's claim, still that knowledge was only notice of the fact that the respondents Thomas desired to

prefer certain of their creditors. It was not notice of a
fraudulent intent, but notice of a desire to do a lawful thing.
By this transfer these preferred creditors secured exactly
what the appellant sought to secure by its action and the
attachment. It was a race for preference. Both in early
and late decisions this court has declared it to be the estab-
lished law of this state that an insolvent debtor may prefer one
or more of his creditors, even if it exhausts the whole of his
property to do so. *West Coast Grocery Co. v. Stinson,* 13
Wash. 255, 43 Pac. 35; *Vietor v. Glover,* 17 Wash. 37, 48
Pac. 788, 40 L. R. A. 297; *Troy v. Morse,* 22 Wash. 280, 60
Pac. 648; *McAvoy v. Jennings,* 44 Wash. 79, 87 Pac. 53;
*National Surety Co. v. Udd,* 65 Wash. 471, 118 Pac. 347.
In the present case there was no evidence that the debts pre-
ferred were not real, that the payment was not actual, nor
that the consideration was inadequate. There was no evi-
dence whatever that the transfer was to be used merely as a
colorable consideration to protect the debtors' property from
the appellant's claim, or to hinder its collection. There was
no trust for the benefit of the debtors. If an insolvent debtor
may prefer one or more of his creditors even to the extent of
exhausting his entire property, then it is obvious, as we said
in *National Surety Co. v. Udd, supra,* that:

"Notice of the debtor's insolvency and of his intention to
prefer, and that it may actually defeat the collection of other
debts, or even notice of an intent to defeat an execution, will
not injuriously affect the preferred creditor. He is not a
volunteer. He is protecting himself and has a right to the
reward of his diligence. It obviously requires much stronger
proof to charge a preferred creditor with fraud than would
be required in the case of a mere volunteer. The proof must
show an active, rather than the merely passive, participation
in the debtor's fraudulent design, which would be sufficient in
case of a volunteer."

If a preference is to be permitted at all, then the steps taken
to secure that preference cannot logically be considered
badges of fraud if the debts paid are *bona fide,* and the debtor

does not profit by the transfer beyond having such preferred claims satisfied. The following quotation sets forth what we believe to be the true rule and the grounds upon which it is based.

"A preference may be given and received for the express purpose of defeating an execution, for the mere intent to defeat an execution does not of itself constitute fraud. The payment of a just debt is what the law admits to be rightful, and is not, therefore, fraudulent, either in law or in fact. The preferred creditor cannot be affected injuriously with notice of the debtor's intent to prefer, and thereby defeat an execution, because the purpose is honest, and such as the law sanctions. This is not delaying or hindering within the meaning of the statute. It does not deprive other creditors of any legal right, for they have no right to a priority. One creditor of a failing debtor is not, under the statute, bound to take care of the others. In such case, if the assets are not sufficient to pay all, somebody must suffer. It is a race in which it is impossible for every one to be foremost. He who has the advantage, whether he gets it by the preference of the debtor or by his own superior vigilance, or by both causes combined, is entitled, under the statute, to what he wins, provided he takes no more than his honest due. He is not obliged to look out for other creditors, or to consider whether they will or will not get their debts. He does not violate any principle of the statute when he takes payment or security for his demand, though others are deprived of all means of obtaining satisfaction of their own equally meritorious claims, and though he may be aware of the intent of the debtor to defeat the collection of them. Fraud, in its legal sense, cannot be predicated of such a transaction. Wherever there is a true debt, and a real transfer for an adequate consideration, there is no collusion." Bump, Fraudulent Conveyances (4th ed.), § 170.

See, also, 20 Cyc. 472, 589, 590, 592, 594; *Aulman v. Aulman*, 71 Iowa 124, 32 N. W. 240, 60 Am. Rep. 783; *Nelson & Co. v. Leiter*, 190 Ill. 414, 60 N. E. 851, 83 Am. St. 142; *Sunday Creek Coal Co. v. Burnham*, 52 Neb. 364, 72 N. W. 487; *Repauno Chemical Co. v. Victor Hardware Co.*, 101 Fed. 948; *Bamberger v. Schoolfield*, 160 U. S. 149.

If we credit the positive testimony of five witnesses as to the absolute nature of these transfers and as to the terms of the trust upon which they were made, and if we further believe the undisputed evidence as to the *bona fides* of the debts preferred and as to the value of the property transferred, then there is no escaping the conclusion reached by the trial court. This case, both as to facts and law, is closely analogous to *Vietor v. Glover, supra.* The trial court saw these witnesses and heard them testify. He was better able to pass upon the credibility of their testimony then we are. We cannot say that he was not justified in believing their version of the transaction.

There was considerable testimony relating to a caterpillar engine, not the one mentioned in the court's findings, which several witnesses testified was not intended to be included in the bills of sale, being omitted under the mistaken belief that it had been sold to the respondent Thomas upon a conditional sale contract. Sometime after the transaction here involved, it was transferred by bill of sale to respondents' attorney for an attorney's fee. It was not included within the issues in this case, and we deem it unnecessary to pass upon the validity of this last mentioned transfer.

The judgment is affirmed.

CROW, C. J., FULLERTON, MAIN, and MORRIS, JJ., concur.