[Nos. 22687, 22688. Department Two. April 14, 1931.]

B. B. PUTNAM, *Appellant*, v. ANDREW PETERSON *et al.*, *Respondents*.

B. B. PUTNAM, *Appellant*, v. ANNIE ABRAHAMSON *et al.*, *Respondents.*[1]

*Eggerman & Rosling* and *Riddell, Brackett & Fowler*, for appellant.

*Stratton & Kane*, for respondents.

FULLERTON, J.—On December 23, 1924, the appellant, Putnam, in an action brought in the superior court of

[1]Reported in 297 Pac. 1076.

King county, recovered a judgment against the respondent Peterson for the sum of $3,771.28. He was unable to collect the judgment by execution, and later on instituted garnishment proceedings against a number of persons whom he suspected to be indebted to Peterson, or to have property belonging to Peterson, subject to be applied in satisfaction of the debt. The persons garnisheed made answer, in which they severally denied indebtedness to Peterson, and denied having property belonging to him.

The answers were controverted, but, before the issues were determined, the appellant brought a direct action in the superior court above named against the several garnishees and others, in which he charged the defendants in the action with a conspiracy to cheat and defraud him, by enabling Peterson to cover up and conceal his property, thereby preventing its application to the satisfaction of his judgment. After issue had been taken on the allegations of the complaint, the proceedings were consolidated for trial and tried as one action. The trial was by the court sitting without a jury, and resulted in findings and a judgment in favor of the garnishee defendants in the garnishee proceedings, and a judgment in favor of the defendants in the conspiracy action.

The evidence at the trial developed that Emil Goetz had become indebted to Peterson, in a transaction arising out of the sale of certain real property, in the sum of $8,425.00, for which he gave Peterson his promissory note. The note, at the time of the service of the garnishment proceedings and at the time of the trial, was in the possession of a bank, pledged to secure a loan, the amount of which was less than the amount due on the note. The controversy at the trial was over the ownership of the note. Peterson, prior to the institution of the proceedings here involved, had as-

signed the note to the defendant Annie Abrahamson, and it was to secure a loan to a business in which she was interested that the note was pledged to the bank to secure.

It is the contention of the appellant that the assignment was without consideration, and was in fraud of the creditors of Peterson, while Peterson and Abrahamson contend that it was assigned as part payment for advances of money which Abrahamson had theretofore made to Peterson, and for an obligation incurred to Abrahamson by Peterson which he had not paid.

The evidence discloses that Peterson was in the contracting business, and that at times his business required him to borrow large sums of money. These apparently were commonly obtained from a banking institution, but as early as 1910 Abrahamson made him a loan of nine thousand dollars. Thereafter, Peterson became the owner of some real property in Grays Harbor county, near Aberdeen, and this he deeded to Abrahamson as a part payment on the loan. There is a question in the evidence as to the value of the property, but the court rightly found, we think, that it did not exceed six thousand dollars.

Between the years 1917 and 1922, Peterson was engaged under a contract in the construction of a reservoir at Astoria, in the state of Oregon. On this contract, Peterson suffered a severe loss, and Abrahamson, in the fall of the year 1921, made him an additional loan of eight thousand dollars. As security for this loan, Peterson deeded to Abrahamson certain lots in the city of Astoria. But these lots, it was testified, were subject to taxes and liens to such an extent that they were thought not to be worth redeeming, and they were suffered to be sold in payment of the taxes

and liens upon them, netting nothing to Abrahamson.

The obligation mentioned was one claimed to be due for room rent and board. Peterson is a bachelor, and for many years he has retained for his personal use a room in Abrahamson's home. This room he used as a place for keeping his personal effects, and as a sleeping room during the times his business kept him in Seattle. He also, while in Seattle, boarded at Abrahamson's table. Both Peterson and Abrahamson testified that it was understood between them that he was to pay her the reasonable value of the room and board. Nothing, however, had ever been paid on the account, and the reasonable value of the accommodations furnished amounted, according to their estimates, to a large sum.

In the appellant's view of the evidence, these loans were largely fictitious, and, if they existed at all, were repaid by the transfer of the real property mentioned. As to the accommodations furnished, they contend that there never was any intent that they should create an obligation.

But we think we need not review the evidence on these questions in detail. The evidence, indeed, shows that Peterson and Abrahamson did not deal with each other in the manner of persons occupying purely business relations. It shows that a close friendship existed between them, and that they had in each other a mutual trust and confidence which caused them to leave much to rest in parol where more exact business relations would have required a writing. We think, too, that they have overstated the amounts due from the one to the other, in that they have compounded interest where simple interest alone is collectible, and that they have overestimated the value of the accommodations furnished.

But we agree with the trial court in its conclusions that the advancements of money claimed to have been made were actually made, and that there was an agreement that the reasonable value of the accommodations furnished should be paid for. That there may have been overcharges, however, will not affect the result. The trial court found, and we concur in the finding, that, after all proper deductions are made, there was an indebtedness from Peterson to Abrahamson, at the time the Goetz note was transferred, in excess of the value of the note. In making the transfer, Peterson may have preferred one creditor over another, but this he had the right to do, even though he was at the time insolvent.

The judgments are affirmed.

MILLARD, PARKER, and MITCHELL, JJ., concur.

BEALS, J., dissents.