[No. 25696. Department Two. December 27, 1935.]

P. H. TOMLINSON *et al.*, *Appellants*, v. HALSEY W. BURGESS *et al.*, *Respondents.*[1]

*John C. Hurspool*, for appellants.
*Cary M. Rader*, for respondents.

[1]Reported in 52 P. (2d) 1259.

34

HOLCOMB, J.—This action was brought by appel-
lant Tomlinson, a creditor of Martin Hansen, to set
aside a deed and bill of sale from Hansen to respond-
ents as being made to hinder, delay and defraud the
creditors of Hansen. Hansen died intestate just prior
to the commencement of this action and a niece,
Elfreda Jensen, was appointed administratrix of his
estate. She filed a cross-complaint against respond-
ents seeking the same relief on behalf of creditors of
the estate. From an adverse judgment, both join in
appealing to this court. Respondents will be men-
tioned in the singular number, since the husband con-
ducted all of the transactions.

The expressed consideration in the deed was two
thousand dollars and also in the bill of sale, but in
the bill of sale was a contract wherein it was pro-
vided that this sum should be paid at the rate of forty
dollars per month as rental while Hansen was in the
hospital at Seattle; that, if he died from that illness,
his funeral expenses should be paid; that then Howard
Reser should be paid $136 in full and Mrs. W. C.
Smith, another creditor, should be paid her debt of
one hundred dollars; that, after those payments, ap-
pellant Tomlinson should be paid; and that anything
left should go to general creditors. The funeral ex-
penses were to be paid by respondent at once when
incurred, but the rest of the indebtedness at the rate
of forty dollars per month. At the time of the exe-
cution of the deed and bill of sale, Hansen was in-
debted to appellant Tomlinson in a sum approximat-
ing $2,014. He was also indebted to Dr. R. W. Smith
for $150, as well as some other debts.

Simultaneously with the execution of the deed and
bill of sale, respondent and Hansen executed an addi-
tional written agreement whereby respondent agreed
to reconvey all property to Hansen within one year

upon Hansen paying to respondent such money as he had paid for or to Hansen and for taxes and improvements; and provided that, if such payments did not amount to forty dollars a month, then respondent should pay enough to make up a rental of such amount.

The deed and bill of sale were executed in Seattle on July 7, 1933, and the deed was recorded the next day in Walla Walla county.

At the time those instruments were executed, Hansen owed the following other debts which were secured by mortgages or liens:

Federal Land Bank, as of June 1, 1933......$5,913.25
Federal Land Bank, delinquent interest..... 704.72
Taxes, 2½ years.......................... 894.75
Mortgage to Walla Walla Dairymen's Association on equipment.................... 273.13
Conditional Sales Contract, Ford car....... 90.51
V. E. Brown, cow mortgage................ 1,347.52

Total mortgage indebtedness...........$9,223.88

In January, 1933, Hansen, because of his physical condition, was forbidden to care for his milk, and thereupon entered into an agreement with the dairymen's association whereby it was to place on the Hansen ranch certain cattle, which it owned and had no place for, and in consideration of the pasturage and use of the ranch, would care for Hansen's cows, milk them, purchase the milk at market price, and, in addition, pay him seventy-five cents per month per cow for each cow it pastured on his ranch. Any feed purchased by the association to care for Hansen's cows was to be charged to Hansen. That agreement was to run for one year, but it was still in operation at the time of the trial of this case, late in 1934. During that time, the association kept an average of

twenty cows on the Hansen place; and from February, 1933, to February, 1934, the proceeds of the milk sold from Hansen's cows amounted to $1,524.

Among other material findings, the trial court found:

"That the value of the grantor's equity in the real and personal property, that is the difference between its value and the incumbrances thereon at the time of said sale was the sum of $1,948.27 and the consideration for the equity was the sum of $2,000.

"That on or about January 18, 1933, about six months before said sale, owing to the cancerous condition of the face of the grantor Martin Hanson, the public health authorities required him to discontinue handling the dairy cows and milk therefrom and on or about said time he entered into the agreement with Walla Walla Dairymen's association, of which the defendant Halsey W. Burgess was manager, whereby the association took over the handling of his cows and milk, and thereafter, though Mr. Hanson remained on the place, he was not permitted to care for the cows or go about the milk house and from then on the dairy herd were handled by said association under said agreement.

"That a short time prior to July 7, 1933, . . . he suddenly left the farm and went to a hospital in Seattle without funds for his care, that while he was in the Seattle hospital defendant Burgess visited him and arranged for the purchase of the property and upon defendant's return to Walla Walla the instruments evidencing the sale were prepared and forwarded to Hanson for execution; and that defendant Burgess had no knowledge of Hanson's indebtedness to plaintiff until the terms of sale were discussed with Hanson in Seattle a short time prior to the execution of the instruments.

"That the plaintiff and cross-complainant have failed to sustain the material allegations of the complaint and cross-complaint except as to such inferences in their favor that may be drawn from the foregoing facts."

All findings are supported by competent documentary evidence and testimony of witnesses before him which the trial judge believed credible. The sale price was adequate and the contracts fair for both parties, under the findings.

Respondent also admitted at the trial that he now has about $750 which, by the terms of his contract, he is obligated to pay to appellant Tomlinson.

The argument by counsel for both parties takes a much wider range than is necessary.

We shall assume for the purposes of this decision that the indebtedness owing by decedent to appellant was the amount above stated, and that he also owed Dr. Smith the amount stated; that both debts were not paid except in the manner provided by the bill of sale and contract.

■ Appellants cite Rem. Rev. Stat., § 5824 [P. C. § 7744], which reads:

"All deeds of gift, all conveyances, and all transfers or assignments, verbal or written, of goods, chattels, or things in action, made in trust for the use of the person making the same, shall be void as against the existing or subsequent creditors of such person."

Appellants then assert that, under that statute, such conveyances are uniformly held void, citing *Adams v. Dempsey,* 35 Wash. 80, 76 Pac. 538; *Butler v. Arnold,* 115 Wash. 204, 196 Pac. 582; and *Siegel v. Kracower,* 144 Wash. 609, 258 Pac. 493.

In the first case cited, we held that there was sufficient evidence to require the good faith of the transaction to be submitted to a jury upon the facts there stated.

The second case cited was a case where an absolute transfer of real property by an insolvent debtor had been made to his daughter, in consideration of moneys advanced by her to protect the property from

sale under a judgment. We there held that it was not good as an absolute conveyance, but would be deemed one in trust to secure her for her advances. That was a case involving a transaction between a father and daughter, or, in other words, near kin, or one where the good faith of the parties is always to be carefully scrutinized.

The third case above cited was one where the transaction was between relatives in anticipation of a judgment and in fraud of creditors, for it appeared that the grantee was in sympathy with the grantor's effort to defeat enforcement of the judgment, and that the debtor's property was to be sold, and after certain payments, the balance was to be turned over to the debtor. We also there held that the party seeking to set aside a transfer on the ground of fraud has the burden of proving the fraud which vitiates the transaction; that an insolvent's preference of a creditor must be free from concealment or bad faith and will not be upheld where the creditor had notice that the debtor's intent in the transfer of all his property was to forever defeat the payment of an anticipated judgment.

None of the cases cited is in any way similar to the instant case.

There was no relationship between appellant Tomlinson and respondent. There was no fiduciary or trust relationship. They dealt entirely at arm's length. There is no evidence of a secret trust between them, nor can one be imputed from the fact asserted by appellants that the additional agreement provided for a reconveyance to Hansen which, of itself, bound respondent to hold the real estate for Hansen. The agreement to reconvey to Hansen was nothing but an executory contract to sell the real and personal property for a given sum, provided the conditions of the

agreement were complied with within a period of one year, or, in case of the death of Hansen, the contract to be entirely null and void. Hansen could not have asked for a reconveyance to him except by making the payments and performing the conditions specified in the agreement for conveyance. There is no evidence in the record of any secret interest, intent or understanding between respondent and Hansen to hinder, delay or defraud any creditor.

However, this court has always held that it is no badge of fraud for an insolvent, personal debtor to prefer one or more of his creditors over others, even if it exhausts the whole of his property, where the debt is real and the payment actual and adequate. *Samuel v. Kittenger,* 6 Wash. 261, 33 Pac. 509; *Holt Manufacturing Co. v. Bennington,* 73 Wash. 467, 132 Pac. 30; *Merrick v. Pattison,* 85 Wash. 240, 147 Pac. 1137; *Meakim v. Ludwig,* 99 Wash. 180, 169 Pac. 24; *Marinovich v. Newton,* 126 Wash. 22, 216 Pac. 876; *Puget Sound National Bank v. More,* 159 Wash. 5, 291 Pac. 1081; *Essig v. Collier,* 159 Wash. 172, 292 Pac. 414; *Putnam v. Peterson,* 162 Wash. 130, 297 Pac. 1076. (The last four cases were not cited by counsel for respondent, although texts to the same effect were cited from Ruling Case Law and Corpus Juris.)

In the *Marinovich* case, *supra,* it was held that a discrepancy in sale of nine hundred dollars for a diamond ring, the value of which was not to exceed twelve hundred dollars, did not show such a discrepancy between the price and the value as to suggest a conveyance in fraud of creditors; and that the sale would not be set aside when the purchaser had no knowledge of fraudulent intent on the part of the debtor. To the same effect are the two cases in 159 Washington, cited above.

In the *Merrick* case, *supra,* after holding that a

debtor may prefer a creditor, although it involved a transaction between parent and child, the facts that the debt preferred was for past indebtedness and the new consideration was the assumption of a mortgage debt and taxes on the property, were held not to avoid the transaction. In the *Puget Sound National Bank* case, *supra,* we held that the fact that the deed was not promptly recorded was not controlling.

As to the value of the property transferred by Hansen to Burgess, there is considerable range of opinion, but we cannot, on the record before us, discover that it preponderates against the finding of the trial court. The cases above cited control this case.

The judgment is affirmed.

MAIN, BLAKE, BEALS, and STEINERT, JJ., concur.