JUANA GONZÁLEZ DÍAZ, como heredera de MARÍA DÍAZ MIYA-RES VDA. DE ABARCA, demandante y apelante, *v.* SOL LUIS DESCARTES, SECRETARIO DE HACIENDA DE PUERTO RICO, demandado y apelado.

Número 10937.
*Sometido:* 4 de noviembre de 1953. *Resuelto:* 12 de febrero de 1954.

*Gabriel de La Haba* y *Rafael Baragaño, Jr.,* abogados de la apelante; *Hon. Secretario de Justicia José Trías Monge* y *Arnaldo P. Cabrera, Procurador Auxiliar,* abogados del apelado.

El Juez Asociado Señor Marrero emitió la opinión del tribunal.

El problema ante nuestra consideración se reduce a determinar si bajo nuestra Ley de Contribuciones Sobre Ingresos, en Puerto Rico es tributable o no la ganancia que un extranjero no residente percibe en la venta de su participación en una sociedad mercantil domiciliada en esta isla.

La demandante Juana González Díaz es la única y universal heredera de María Díaz Miyares vda. de Abarca, quien falleció en España en el año 1947. Su causante era socia comanditaria de la mercantil Sucesores de Abarca, S. en C., organizada y domiciliada en Puerto Rico y cuyas actividades comerciales se desarrollaban aquí. Por escritura pública de 30 de diciembre de 1940 Enrique Abarca Sanfeliz, como apoderado de María Díaz Miyares vda. de Abarca, vendió a Ángel Abarca Portilla todo título, derecho y acción que en la referida sociedad tenía su mandante, por un precio de $34,000 que dicho apoderado confesó recibido. Al tener conocimiento del traspaso la poderdante repudió el mismo, pero debido a la guerra mundial entonces prevaleciente no fué hasta el año 1946 que ella pudo trasladarse a Puerto Rico con el propósito de hacer efectiva su impugnación. Estando ya en Puerto Rico ella llegó a una transacción amigable con el comprador Ángel Abarca Portilla. Así se hizo constar por documento público otorgado el 24 de julio de 1946, que lleva por título "Escritura de Transacción, Convalidación de Actos y Contratos y otros Extremos." En esa escritura se fija la suma de $255,642.31 como precio del interés o participación de la citada causante en la mercantil, y se aclara, conviene y estipula que dicha suma comprende la cantidad de $96,448.20, importe de la cuenta corriente de la comanditaria en la sociedad; la de $31,827.90 por concepto de intereses sobre la cuenta corriente al 6 por ciento desde el 30 de diciembre de 1940—fecha del otorgamiento de la escritura original por el apoderado—al 1º de julio de 1946; y la de $127,366.21, valor de la participación comanditaria, más otros beneficios en di-

nero, acciones etc. recibidos por el adquirente Abarca Portilla. El Tesorero de Puerto Rico—hoy día Secretario de Hacienda—determinó que en la venta de este activo de capital (*capital asset*) por la viuda de Abarca, causante de la demandante, había habido un beneficio ascendente a $120,194.11, sobre el cual debía pagar contribución sobre ingresos. Posteriormente rebajó esa determinación de ganancias a $88,366.21, al admitir la demandante que debía pagar contribución sobre la suma de $31,827.90 que su causante había recibido en concepto de intereses sobre la cuenta corriente. Notificada la correspondiente deficiencia, llenados los trámites administrativos de rigor y visto el caso ante el antiguo Tribunal de Contribuciones de Puerto Rico, éste redujo la suma de $88,366.21, determinada por el Tesorero como ganancia, a la de $58,775.77,(¹) y concluyó que sobre esa cantidad la demandante venía obligada a pagar contribución sobre ingresos. Dictó sentencia a ese efecto y la demandante apeló. Sostiene ésta ahora que el tribunal sentenciador erró al resolver que la ganancia obtenida por María Díaz Miyares vda. de Abarca en la venta de su comandita en la sociedad Sucrs. de Abarca, S. en C., era tributable bajo las disposiciones de la Ley de Contribuciones Sobre Ingresos, "por constituir un ingreso de fuentes radicadas dentro de Puerto Rico a tenor con la sección 19(*c*)(5) de la Ley, aun cuando a la fecha de la venta ella era ciudadana española, no residente en Puerto Rico, no ciudadana de Puerto Rico y persona que no estaba dedicada a negocios en Puerto Rico;" y que tal determinación "infringe derechos constitucionales de la demandante-apelante establecidos por la Constitución de los Estados

---

(¹) La rebaja se debió a que el antiguo Tribunal de Contribuciones falló a favor de la querellante la segunda causa de acción, determinando que la suma de $29,590.44 (la demandante reclamaba una deducción de $30,440.44) no era tributable, por constituir la misma incrementos a la comandita, y que sobre esa cantidad el adquirente ya había pagado al Tesoro la correspondiente contribución sobre ingresos.

Sobre la cantidad de $29,590.44, declarada como deducible por el Tribunal, no hay controversia alguna toda vez que el Secretario de Hacienda no apeló de la sentencia dictada.

Unidos y por la sección 2 de la Ley Orgánica de Puerto Rico . . . al privarla de su propiedad sin un debido proceso de ley."

Es un hecho innegable que durante los años en cuestión María Díaz Miyares vda. de Abarca era ciudadana española residente en España. También lo es que la mercantil de la cual ella era socia comanditaria fué organizada en la isla de Puerto Rico, que aquí tenía su domicilio social y que aquí desarrollaba el cúmulo de sus actividades comerciales. La quintaesencia de la contención de la demandante, sin embargo, es que el interés que su causante tenía en la sociedad de que formaba parte como comanditaria era un bien incorpóreo, intangible, y que siendo ésta una persona no residente de esta isla el *situs* de esos intangibles lo era España y no Puerto Rico, por lo que el gobierno de esta isla carece de facultad para imponer tributos sobre tales intangibles. La demandante, sin embargo, manifiesta en su alegato que "quiere sentar con toda claridad que no discute o pone en duda el derecho que le asiste a la Asamblea Legislativa a legislar imponiendo contribuciones sobre ingresos a la ganancia que pueda tener un no residente no ciudadano de Puerto Rico al vender un bien de carácter incorporal o intangible, dentro o fuera de Puerto Rico, si tal intangible consiste en acciones de corporaciones de Puerto Rico, *participación en sociedades industriales o mercantiles de Puerto Rico*, bonos del Gobierno de Puerto Rico y de entidades de la isla y otros similares." Y que "está ya tan firmemente sentado en la jurisprudencia [2] . . . que más de un estado puede constitucionalmente imponer tributo sobre una misma transferencia, que resultaría ridículo discutir nuevamente esta cuestión. Pero, la contribución puede imponerse sólo cuando hay jurisdicción (*juris-*

[2] Al hacer la anterior manifestación la demandante cita los casos de *McCulloch* v. *Maryland*, 4 L. ed. 579; *Blackstone* v. *Miller*, 47 L. ed. 439; *Curry* v. *McCanless*, 83 L. ed. 1339; *Graves* v. *Elliott*, 83 L. ed 1357; *Tax Commission* v. *Aldrich*, 86 L. ed. 1358; *Graves* v. *Schmidlapp*, 86 L. ed. 1097; *Central Hanover Bank* v. *Kelly*, 87 L. ed. 1282; *Treichler* v. *Wisconsin*, 94 L. ed. 37.

*diction to tax*) a base de un estatuto que la autorice y siempre que el estado que la exige pueda comprobar su derecho sobre la cosa o sobre la persona. De no existir un estatuto que claramente imponga el tributo al evento que da lugar al tributo (*taxable event*) o de no tener el estado jurisdicción sobre la persona por no ser residente, o dominio sobre la cosa por no radicar dentro de sus confines, entonces no hay jurisdicción contributiva, y una imposición resultaría inconstitucional." (Bastardillas nuestras.)

Pasamos ahora a discutir los méritos del caso:

"La sección 19(*a*) (2) de la Ley de Contribuciones sobre Ingresos (Leyes de 1925, pág. 401) según fué enmendada por la Ley núm. 31 de 12 de abril de 1941, págs. 479, 509, dispone:

"En el caso de un individuo no residente que no sea ciudadano de Puerto Rico las siguientes cantidades de ingreso bruto serán consideradas como ingreso derivado de fuentes radicadas dentro de Puerto Rico.

" . . . . . . .

"(2) *La cantidad recibida como beneficio de sociedades* o como dividendos de una corporación doméstica u otra entidad que no sea incorporada, . . ." (Bastardillas nuestras.)

¿Obtuvo la causante de la apelante un "beneficio de sociedad" al vender su participación en la sociedad de la cual era comanditaria? Esta pregunta debe contestarse afirmativamente, ya que por tal participación, que originalmente tenía un valor de $34,000,—su aportación a la sociedad—ella obtuvo en 1946 un precio mucho mayor. La diferencia entre uno y otro valor, es decir entre la aportación original y el precio en que vendió su interés, resultó en un "beneficio en la sociedad" de que formaba parte. Así lo resuelve toda la jurisprudencia que hemos hallado al efecto, y con ella estamos contestes. Bajo unos estatutos tal beneficio se considera como un ingreso ordinario y según otros como una "ganancia de capital (*capital gain*)". En uno u otro caso el beneficio resultante es tributable como una ganancia de sociedad. 6 Merten's, *Law of Federal Income Taxation*, pág. 189, sección 35.27;

*Estate of Herbert B. Hatch,* 14 T. C. 251, 254; *Estate of Aaron Lowenstein,* 12 T. C. 694, 699; *Louis Karsch,* 8 T. C. 1327; *Appeal of Warren E. Brown,* 4 T. C. 56; *Humphrey* v. *Commissioner,* 32 B.T.A. 280; *United States* v. *Shapiro,* 178 F.2d 459; *Swiren* v. *Commissioner,* 183 F.2d 656; *Commissioner of Internal Revenue* v. *Smith,* 173 F.2d 470; *Long* v. *Commissioner,* 173 F.2d 471; *Goodman* v. *Commissioner,* 200 F.2d 681.

 Bastaría la conclusión anterior para que procediera la confirmación de la sentencia que sirve de objeto al presente recurso. Empero, creemos pertinente discutir otros motivos —discutidos también con la mayor amplitud por la apelante— a virtud de los cuales llegamos igualmente a la conclusión de que la sentencia apelada debe ser sostenida.

Estamos aquí ante un problema contributivo. Es a la Ley de Contribuciones Sobre Ingresos y a la jurisprudencia establecida en relación con la materia, a las que primordialmente debemos acudir para la solución del mismo. Al Código Civil, supletorio de la Ley que rige la materia, solamente debe recurrirse para llenar cualesquiera lagunas que hubiere en esa ley especial.(³) Decimos esto porque la apelante pone gran énfasis en cierto articulado de ese Código. Aplicaremos pues, la ley especial—la de Contribuciones Sobre Ingresos— y examinaremos la jurisprudencia en relación con el asunto en disputa.

Insiste la apelante en que el interés de su causante en la sociedad de que formaba parte era un bien incorpóreo y que siéndolo el *situs* del mismo lo era el de la residencia de su dueña, es decir España. Llega como consecuencia de esa aseveración a la conclusión de que Puerto Rico carece de potestad para cobrarle contribución sobre los beneficios recibidos. Convenimos con la apelante en que tal interés o participación era una propiedad incorpórea, intangible—*Blodgett*

---

(³) El artículo 12 del Código Civil, ed. de 1930 dispone que:

"En las materias que se rijan por leyes especiales, la deficiencia de éstas se suplirá por las disposiciones de este código."

v. *Silberman*, 72 L. ed. 749, 757; *De Ganay* v. *Lederer*, 63 L. ed. 1042—. En lo que sí no estamos de acuerdo con ella es en que por el mero hecho de residir su causante fuera de Puerto Rico esa propiedad intangible no tiene en esta isla un *situs* tributable. La contención de la apelante se basa fundamentalmente en la antigua máxima de *mobilia sequuntur personam*, o sea la de que los bienes muebles siguen a la persona de su dueño.(⁴) Esa máxima fué el resultado de condiciones que en gran parte han dejado de existir y de una época en que la propiedad mueble consistía por lo general de artículos que, conforme indica su nombre, eran utilizados por el hombre para su uso personal, como efectos de oro y plata, animales domésticos, etc. Toda vez que en épocas pretéritas semejantes bienes permanecían bajo el dominio inmediato de su dueño y eran de ordinario transportados por él en sus largos viajes, se incorporó al derecho el principio de que el *situs* o radicación de tales bienes lo constituía el domicilio de su dueño y de que en relación con semejante propiedad los derechos de este último se regían por la ley de su domicilio. Sin embargo, en materia contributiva y en lo que a la tributación de bienes muebles, tangibles o intangibles, de personas no residentes concierne, el precepto ha sufrido considerables modificaciones. En tiempos modernos la regla general es que el poder legislativo de un estado, bajo circunstancias apropiadas, puede imponer tributos tanto a los bienes muebles como a los inmuebles de un no residente. *Eidman* v. *Martínez*, 184 U. S. 578, 583. Este propio Tribunal ya ha resuelto que bienes muebles intangibles pertenecientes a un testador no residente, pero depositados o situados dentro de esta isla, están sujetos a contribución de herencia. *Piacentini* v. *Buscaglia, Tes.*, 59 D.P.R. 767. Al mismo efecto véanse *Burnet* v. *Brooks*, 77 L. ed. 844; *In re McCreery's Estate*, 29 P.2d 186. También se ha resuelto que un estado puede constitucionalmente imponer contribución sobre el ingreso neto de un no residente, de-

---

(⁴) El artículo 10 del Código Civil preceptúa que "Los bienes muebles están sujetos a la ley de la nación del propietario; . . ."

rivado de propiedad situada dentro del estado que impone la contribución, así como sobre negocios realizados dentro del mismo. *Shaffer* v. *Carter*, 252 U. S. 37, 64 L. ed. 445; *Travis* v. *Yale & T. Mfg. Co.*, 252 U. S. 60, 64 L. ed. 460; *People ex rel. Monjo* v. *State Tax Commission*, 218 App. Div. 1, 217 N. Y. Supp. 669, 90 A.L.R. 486. Véase *Postley* v. *Sec. de Hacienda*, ante pág. 874:

En relación con la anterior máxima el Tribunal Supremo de la nación en el caso de *First Bank Corp.* v. *Minnesota*, 301 U. S. 234, se expresa así a la pág. 241:

"La máxima *mobilia sequuntur personam,* que ha merecido aceptación incondicional al aplicarse a la tributación de intangibles, *Blodgett* v. *Silberman,* 277 U. S. 1, 9–10, establece una regla sin revelar sus razones. Pero recientemente hemos tenido oportunidad de indicar que el disfrute por el residente de un estado de la protección que le dan sus leyes es inseparable de la responsabilidad de contribuir a las cargas del gobierno de ese estado, y que una contribución que esté a tono con el valor de los derechos protegidos es un método equitativo de distribuir las cargas del gobierno entre aquéllos que tienen el privilegio de gozar de sus beneficios. Véase *New York ex rel. Cohn* v. *Graves,* 300 U. S. 308.

"Las ventajas económicas disfrutadas a través de semejante protección, en el lugar del domicilio, del dominio de derechos sobre intangibles, cuyo valor está en armonía con la contribución, guardan relación directa con la distribución de las cargas que la contribución impone. Estas consideraciones sostienen la tributación de intangibles en el lugar del domicilio, por lo menos cuando no se demuestra que tales intangibles han adquirido un *situs* comercial en otro lugar, como ejercicio adecuado de los poderes del gobierno. Consideraciones similares justifican que se les imponga contribución en su *situs* comercial, pues es allí que el dueño en todo sentido práctico, invoca y disfruta la protección de las leyes, y que en consecuencia de ello disfruta de las ventajas económicas del dominio de tales bienes."

Sobre esta máxima también se ha dicho que ella "meramente significa que el *situs* de bienes muebles para fines contributivos lo es el del domicilio de su dueño, a menos que exista un estatuto que exprese lo contrario o, cuando se trata

de intangibles, a menos que los mismos hayan adquirido un *situs* comercial(⁵) en un estado distinto a aquél en que el dueño de tales intangibles está domiciliado." *In re Wheeling Steel Corp. Assessment*, 115 W. Va. 553, 177 S.E. 535, 104 A.L.R. 802.

La causante de la demandante no era ciudadana de Puerto Rico, ni de Estados Unidos, ni residía aquí. Tampoco residía en un Estado de la Unión Americana. Su domicilio radicaba en un país extranjero. No hay, pues, contienda entre el Estado Libre Asociado de Puerto Rico y un estado de la nación americana. Tampoco la hay entre dos estados de nuestro país. En su consecuencia, podemos decir muy apropiadamente que aquí "la razón para la regla (*mobilia sequuntur personam*) basada en una ficción legal, no existe, y por consiguiente que la regla no tiene ni propósito ni eficacia en este caso. Aplicar la regla en un caso como éste equivaldría a conformar la ocasión para adaptarla a la regla, en vez de aplicar una regla para hacer frente a las circunstancias. Los casos citados de la Corte Suprema de los Estados Unidos . . . rigen la facultad del estado en sus relaciones con otros estados de la *Unión, pero no son aplicables cuando las relaciones interestatales no están envueltas." Piacentini* v. *Buscaglia*, supra, a la pág. 781, citando del caso de *In re Lloyd's Estate*, 185 Wash. 33, 52 P.2d 1269. (Bastardillas nuestras.) Véase, asimismo, *In re McCreery's Estate*, 220 Cal. 26, 29 P.2d 186.

Es indiscutible que la participación que María Díaz Miyares vda. de Abarca tenía en la sociedad Sucrs. de Abarca, S. en C., era una propiedad intangible. *Blodgett* v. *Silberman*, supra, a la pág. 758; *Humphrey* v. *Commissioner*, 32 B.T.A. 280. No obstante, para fines contributivos una propiedad mueble, aun de naturaleza incorpórea, puede tener un

---

(⁵) Para la definición y alcance de la frase *"situs* comercial (*business situs)"*, véanse 76 A.L.R. 806; 79 A.L.R. 346; *Curry* v. *McCanless*, 307 U. S. 357, 83 L. ed. 1339; *First Bank Corp.* v. *Minnesota*, 301 U. S. 234, 238; 51 Am. Jur. 480.

*situs* distinto al del domicilio de su dueño y ser por ende tributable en el lugar donde realmente se halle la propiedad. *Hill* v. *Carter*, 47 F.2d 869. Una propiedad intangible puede también, según se ha visto, adquirir un *situs* comercial en lugar distinto a aquél en que está domiciliada la persona a quien la propiedad pertenece. *First Bank Corp.* v. *Minnesota*, supra; 79 A.L.R. 344, 346, 76 A.L.R. 806; 104 A.L.R. 805; 51 Am. Jur. 480, sec. 469. Y cuando el dueño de intangibles extiende sus actividades fuera del lugar de su domicilio, el estado donde se desarrollan tales actividades puede gravar semejantes intangibles. *Curry* v. *McCanless*, 307 U. S. 357. En el caso de autos la dueña del interés en Sucrs. de Abarca, S. en C., era una extranjera que residía en España, mas esa participación la tenía en una sociedad organizada y domiciliada en Puerto Rico, donde ésta desarrollaba sus actividades. Esa participación tenía por ende un *situs* comercial en Puerto Rico y podía ser gravada por nuestro gobierno.

La facultad de imponer contribuciones es un incidente de la soberanía. *Graves* v. *Schmidlapp*, 315 U. S. 657, 86 L. ed. 1099. Y cuando un estado se propone imponer contribuciones a determinada propiedad o sobre determinados derechos, su propósito de así hacerlo debe aparecer en términos claros e inequívocos. *Eidman* v. *Martínez*, supra. En el presente caso Puerto Rico ha expresado su propósito de imponer una contribución sobre ingresos a cualquier "cantidad recibida como beneficio de sociedades." La frase "beneficio de sociedades" comprende no sólo aquéllos determinados periódicamente por la sociedad, sino también los que un socio puede derivar de la venta de su interés o participación en la sociedad.([6]) El propósito de gravar tales beneficios aparece

([6]) La sección 4 de la Ley de Contribuciones Sobre Ingresos dispone que:
"El término 'beneficios' significará cualquier distribución hecha por una sociedad a sus socios y partícipes procedente de sus utilidades obtenidas después de febrero 28 de 1913."
Y la sección 15 de la misma Ley preceptúa que:
"(*a*) El término 'ingreso bruto' incluye ganancias, beneficios, e in-

en el estatuto de Puerto Rico ya citado de manera clara, terminante y precisa. A virtud de ello la obligación por parte de la demandante de pagar contribución sobre los beneficios obtenidos por su causante resulta paladina. Pero a mayor abundamiento la obligación de pagar la contribución surge también de los demás razonamientos de esta opinión. "El imponer elevadas contribuciones a los ciudadanos americanos y mediante legislación o a virtud de inacción del Tesorero, permitir al mismo tiempo que extranjeros no residentes se libren del pago de las mismas, no armoniza con lo que conocemos por sentido de justicia." ([7])

*Debe confirmarse la sentencia apelada.*

El Juez Asociado Sr. Sifre está conforme con el resultado.

gresos derivados de . . . *beneficios de sociedades,* valores o de la operación de cualquier negocio explotado con fines de provecho o utilidad, o de ganancias, utilidades e *ingresos derivados de cualquier procedencia;* . . ." (Bastardillas nuestras.)

([7]) Montgomery B. Angell, *The Nonresident Alien: A Problem in Federal Taxation of Income,* XXXVI Columbia L. Rev. 908, 910.