CLERY SALAZAR RIVERA y LUZ EDITA GARCÍA CANCEL, demandantes y recurrentes, *v.* SECRETARIO DE HACIENDA DE PUERTO RICO, demandado y recurrido.

*Número:* R-62-236 *Resuelto:* 1ro. de noviembre de 1963

*J. M. Toro Nazario* y *José H. Rivera Cintrón,* abogados de los recurrentes; *J. B. Fernández Badillo, Procurador General,* y *Américo Serra, Procurador General Auxiliar,* abogados del recurrido.

Sala integrada por el Juez Asociado Señor Belaval como Presidente de Sala y los Jueces Asociados Señores Hernández Matos y Santana Becerra.

EL JUEZ ASOCIADO SEÑOR HERNÁNDEZ MATOS emitió la opinión del Tribunal.

Con arreglo al Art. 1702 de nuestro Código Civil el contrato aleatorio de renta vitalicia obliga al deudor a pagar una pensión o rédito anual durante la vida de una o más personas determinadas por un capital en bienes muebles o inmuebles, cuyo dominio se le transfiere desde luego con la carga de la pensión.

Muchos autores opinan que la renta vitalicia no es propiamente un contrato, aunque ésta sea, generalmente, la forma en que se constituye, sino que es un crédito especial que puede nacer de distintas fuentes (testamento, contrato), habiendo, por tanto, legado de renta vitalicia, donaciones de renta vitalicia, ventas a renta vitalicia en las que la renta hace el papel de precio. Colin y Capitant estiman que cuando se ha constituido a título gratuito no es un contrato aleatorio, sino que es una donación. (¹)

Cuando se aprobó la Ley Núm. 303 del 12 de abril de 1946, imponiendo contribuciones sobre herencias y sobre donaciones, a los fines de la contribución allí impuesta se definió el término "donación" como incluyendo, en adición a las definidas por dicho Código Civil, algunas transacciones que nunca

---

(¹) Véase la voz "Renta Vitalicia", en *Diccionario de Derecho Privado,* de Casso y Cervera.

antes habían sido clasificadas en tal forma bajo el derecho civil. Entre ellas la transferencia de una propiedad "por menos de su justo valor, bien por dinero, su equivalente en dinero o mediante permuta", y las llamadas donaciones hechas en forma indirecta. El contrato de renta vitalicia entre parientes no fue específicamente incluido.

En *Blanco* v. *Registrador*, 70 D.P.R. 17 (1949), consideramos la negativa de un registrador a inscribir una transferencia, hecha en 1948, de una propiedad urbana, en consideración a la constitución por las adquirentes de una renta vitalicia de $600 anuales sobre el inmueble a favor de los trasmitentes y durante las vidas de éstos. El valor de la propiedad entonces era $12,000. Sostenía el registrador que si bien la transacción fue llevada a efecto bajo el nombre de renta vitalicia, la misma constituía una donación o, en todo caso, un traspaso por precio inferior a su justo valor, y que, conforme a la ley, él no podía inscribirla sin que se acreditara el pago de la contribución sobre donación impuesta por la citada Ley Núm. 303 y sus enmiendas de 1947 y 1948.

Confirmamos la nota recurrida al estimar que se trataba de un traspaso por menos del justo valor que estaba sujeto al pago de la contribución impuesta por esa ley, porque la renta vitalicia de $600 anuales era menor que el valor en alquiler de los bienes.

En busca de mejor fortuna, con posterioridad a nuestra opinión del 24 de mayo de 1949, los contratantes otorgaron en junio siguiente una nueva escritura sobre "Modificación de Contrato de Renta Vitalicia." En ella ratificaron las condiciones del contrato ya celebrado cuya inscripción había denegado el registrador, repitieron que el valor de la propiedad era de $12,000; que estaba alquilada por una renta neta mensual de $60.00; que las constituyentes de la renta vitalicia eran hijas de los trasmitentes y que aquéllas se obligaban a pasar a éstos una renta vitalicia de $960.00 anuales durante

la vida de ambos y con efecto retroactivo a la fecha del contrato original.

Presentada esta nueva escritura al Registro, su inscripción fue también denegada por no haberse presentado el recibo acreditando el pago de la contribución, ya que entendía el registrador que de la misma aparecía "más claramente" que la propiedad se traspasaba por menos de su justo valor de acuerdo con la Ley Núm. 303 y sus enmiendas de 1947 y 1948 y nuestra anterior decisión de 24 de mayo de 1949. Una vez más acudieron a este Tribunal los contratantes.

Revocamos en *Blanco* v. *Registrador*, 70 D.P.R. 587 (1949) la nota denegando la inscripción del contrato modificado. Nos expresamos, en parte, así:

"En la escritura originalmente otorgada se hizo constar que el precio del inmueble trasmitido era $12,000 y que la renta vitalicia que las constituyentes se comprometían a pagar a los transmitentes era de $600 anuales. En la escritura aclaratoria el valor de la propiedad trasmitido sigue siendo el mismo y la renta vitalicia se ha aumentado a $960 al año. A la luz del contexto de nuestra opinión original somos ahora del criterio de que el Registrador ha debido efectuar la inscripción solicitada, por las razones que pasamos a exponer en seguida:

"El valor en alquiler de la propiedad es el de $75 mensuales, cantidad que según los términos de la propia escritura, después de ciertos descuentos que se mencionan deja un ingreso neto mensual de $60. Siendo la renta vitalicia a ser pagada la suma anual de $960, que equivale a un canon mensual de $80, es incuestionable que la misma es mayor que el alquiler de la propiedad transferida. Además, si el valor de la casa es $12,000 y la renta a ser pagada es de $960 el rédito a producirse por la cosa transferida no es inferior al autorizado por la ley. Cf. Ley Núm. 5 de 17 de agosto de 1933, Ses. Ext., Pág. 27."

Tratando de llenar el vacío normativo que respecto a donaciones indirectas hechas vía renta vitalicia, pudiera haber en la Ley Núm. 303 y sus enmiendas, en la sesión legislativa regular del año 1950, se presentó, por recomendación del en-

tonces Tesorero de Puerto Rico, un proyecto de ley para enmendar su Sec. 1ra. (²)

---

(²) Se hizo formar parte del expediente de ese proyecto un memorándum explicativo suscrito por dicho Tesorero que es como sigue:

"17a. Asamblea Legislativa.—2da. Legislatura Ordinaria.—Gobierno de Puerto Rico.—Departamento de Hacienda.—Oficina del Tesorero.—Memorándum Explicativo al Proyecto de Ley.—'Para enmendar la sección 1 de la Ley Núm. 303, aprobada en 12 de abril de 1946, según la misma ha quedado subsiguientemente enmendada, y para otros fines.'

"En el caso de *Agustín Blanco et al.* v. *Registrador de la Propiedad*, 70 D.P.R. 17, se resolvió que cuando se traspasa una propiedad, obligándose el adquirente a pasar una renta vitalicia al trasmitente, inferior al rédito que puede producir el valor de la cosa transferida, dicha transacción constituye una donación por haberse transferido la propiedad por menos de su justo valor.

"En 28 de noviembre de 1949 dicho Tribunal Supremo en otro recurso llevado por el Sr. Blanco contra el Registrador de la Propiedad, resolvió que si la renta vitalicia es equivalente al rédito producido por el valor de la propiedad transferida, la transacción no constituye una donación.

"Por el presente proyecto se enmienda la Sección 1 de la Ley Núm. 303, aprobada en 12 de abril de 1946, conocida como Ley de Herencia, añadiéndosele una disposición mediante la cual cualquier transferencia de propiedad con la obligación por parte del adquirente de pagar al trasmitente cualquier renta vitalicia, aunque dicha renta vitalicia sea equivalente al rédito producido por el valor de la propiedad, se considerará una donación en caso de que el adquirente fuese pariente del trasmitente dentro del primero y segundo grado de consanguinidad o afinidad. Por esta enmienda se trata de llenar la laguna que actualmente existe en la Ley de Herencia a que se refiere la resolución del Tribunal Supremo arriba apuntada.

"También por la enmienda se hace tributable cualquier transferencia de propiedad sujeta a reserva de usufructo a favor del trasmitente cuando el adquirente es pariente del trasmitente.

"Según la ley actualmente en vigor, en el caso de una donación onerosa, se deduce del montante de la donación el importe de la obligación impuesta al donatario, para los efectos de imponer la contribución correspondiente. La enmienda que se propone no altera esta situación. Sin embargo, por medio de la referida enmienda la contribución se impondrá sobre el valor total de los bienes, en los casos de contratos con obligación de renta vitalicia o sujetos a reservas de usufructo, cuando el donante y donatario son parientes.

"En otras palabras, todos los bienes objeto de la donación tributarán en dichos casos, sin que haya que deducirse el importe de la obligación del donatario.—Respetuosamente, (Fdo.) S. L. Descartes, Tesorero."

En la sesión del 22 de marzo de 1950 celebrada por el Senado se hizo constar durante la consideración en Comisión Total del P. de la C. 366, por el senador Ortiz Stella, en la parte pertinente, lo siguiente:

"Señor Presidente y compañeros:

"A petición del compañero Iriarte voy a dar una breve explicación del proyecto.—El proyecto enmienda la Sección 1 de la Ley 303 aprobada en 12 de abril de 1946, que es la Ley de Contribuciones Sobre Herencia y Donaciones. La enmienda está en bastardillas y el propósito es evitar la evasión de la contribución en cesiones de propiedad para conservar una renta vitalicia por usufructo de la propiedad.—Se dio el caso en San Juan de que se cedió una propiedad a unos hijos a cambio de una renta vitalicia. —Fue la escritura de cesión o donación o de traspaso, o comoquiera llamarse, al Registro de la Propiedad y fue denegada porque no se mostró que se había pagado la contribución por la donación. Alegaba el Registrador que como la renta vitalicia que iba a recibir la persona que traspasó la propiedad era claramente inferior a la que hubiera producido el alquiler de la casa, era una donación, o sea, se iban a beneficiar las personas a quienes se cedió la propiedad y entendió que era una donación y negó la inscripción.—El recurso fue al Tribunal Supremo y el Tribunal Supremo confirmó al Registrador.—¿Qué sucede? Entonces se hace una nueva escritura en que estas personas vuelven y traspasan la propiedad, pero entonces imponiendo la obligación a las personas a quienes se traspasaba la propiedad de cederle como renta vitalicia un rédito más alto que fijaba la escritura que venía a ser igual a la que hubiera podido producir el alquiler de esa casa.—El Registrador vuelve y deniega y el Supremo revoca al Registrador diciendo que no era una donación, ya que no se beneficiaban las personas a cuyo favor se cedía la propiedad. Para evitar eso es que se ha introducido esta enmienda a la ley."

El proyecto mencionado se convirtió finalmente en la Ley Núm. 103 de 25 de abril de 1950, enmendando la Sec. 1ra. de la Ley Núm. 303 de 1946. Por esa enmienda desde entonces se ha dispuesto respecto a traspasos de bienes sujetos al pago de renta vitalicia, lo que sigue:

"Cualquier traspaso de propiedad con la obligación por parte del adquirente de pagar al transmitente cualquier renta vitalicia, aunque ésta sea equivalente al rédito producido por el valor de la propiedad, si el adquirente fuese pariente del transmitente dentro del tercer grado de consanguinidad o segundo de afinidad, se considerará también una donación. Cualquier traspaso de propiedad sujeta a reserva de usufructo a favor del transmitente, será considerada donación si el adquirente fuese pariente del transmitente dentro del tercer grado de consanguinidad o segundo de afinidad.

".                                                        "

"*Donación tributable.*—El término 'donación tributable' significa el importe de la donación menos el montante de las exenciones concedidas en la Sección 4 de esta Ley.

"En el caso de una donación onerosa, a los fines de la tributación de la misma se deducirá del montante de la donación el importe de la obligación impuesta al donatario, entendiéndose que en los casos de contratos con obligaciones de rentas vitalicias, o sujetos a reservas de usufructo a favor del donante, se impondrá la contribución que se indica en la Sección Segunda de esta Ley, sobre el valor total de los bienes a la fecha del contrato, si los donatarios fuesen parientes del donante dentro del tercer grado de consanguinidad o segundo de afinidad."

En el recurso que ahora resolvemos ocurrió lo siguiente: Por escritura pública otorgada el 9 de enero de 1960 titulada "Renta Vitalicia", Fernando García Rodríguez transmitió a su hija Luz Edita García Cancel y al esposo de ésta Clery Salazar Rivera cinco fincas urbanas y una rústica situadas en el Municipio de Mayagüez, a cambio de la obligación que los esposos Salazar García asumieron de satisfacerle una renta vitalicia total de $4,267.00 anuales y en plazos mensuales de $355.58 cada plazo, durante la vida natural del trasmitente.

Presentada la aludida escritura de Renta Vitalicia para inscripción en el Registro de la Propiedad, Sección de Mayagüez, el Registrador denegó la inscripción de la misma hasta tanto se hubiese pagado la contribución correspondiente, o se

acreditase por el Secretario de Hacienda que el referido traspaso no estaba sujeto al pago de contribución sobre donación.

El Secretario de Hacienda determinó que el traspaso efectuado mediante el referido contrato de renta vitalicia constituye una donación de acuerdo con lo dispuesto en el apartado (a) de la Sec. 1 de la Ley Núm. 303 de 12 de abril de 1946, según enmendada (13 L.P.R.A. sec. 881(a)) y procedió a imponer la contribución sobre el valor total de los bienes a la fecha del contrato, según lo dispone el apartado (e) de la Sec. 1 de la mencionada Ley Núm. 303 de 1946 (13 L.P.R.A. sec. 881(e)).

Los bienes objeto de la transacción fueron valorados por el Secretario de Hacienda en la cantidad de $69,360, valoración que fue aceptada por los recurrentes.

La participación de cada uno de los recurrentes fue determinada en $34,680 y se impuso una contribución de $4,620 a cada uno.

No estando conformes con la determinación del Secretario de Hacienda, los recurrentes acudieron al Tribunal Superior, Sala de San Juan, que declaró sin lugar la demanda mediante sentencia dictada el día 28 de agosto de 1962.

A solicitud de los demandantes decidimos revisarla. La cuestión fundamental planteada por ellos es si tal trasmisión de bienes está sujeta al pago de la contribución fijada por la Ley Núm. 303 y sus enmiendas. Desde luego, los recurrentes sostienen que debe resolverse en la negativa y el funcionario recurrido en la afirmativa.(3)

Sostienen los esposos recurrentes que el caso de ellos no está cubierto por la Ley Núm. 303 y sus enmiendas, porque (a) "el contrato aquí envuelto es un contrato de compraventa", según lo define el Código Civil (31 L.P.R.A. sec. 249), ya que en el mismo concurren "la entrega de la cosa determinada

---

(3) Ambas partes han sometido alegatos muy bien elaborados, que revelan un cuidadoso y amplio estudio de los puntos discutidos.

y el pago por ella de un precio cierto en dinero o en signo que lo represente", y (b) porque "si fuera tributable tendría la renta a pagarse por esta transacción que ser, a lo sumo, equivalente al rédito producido por el valor de la propiedad."

■ Carecen de méritos ambos planteamientos. El contrato celebrado el 9 de enero de 1960 entre Fernando García Rodríguez y Clery Salazar Rivera y su esposa, no es un contrato de compraventa, sino el de renta vitalicia definido por nuestro Código Civil en su Art. 1702.

■ La compraventa y el contrato de renta vitalicia tienen en común el que son contratos reales, onerosos y son medios para trasmitir definitivamente el dominio sobre los bienes objeto de ellos. Pero no hay concomitancias fundamentales entre ambos contratos que permitan asemejarlos. La renta vitalicia tiene, sin embargo, grandes analogías o afinidades con otras figuras jurídicas, como los contratos de seguro, de préstamo mutuo con interés cuando la propiedad cedida consiste en un capital en efectivo, de censo y de pensión alimenticia. [4]

La más obvia evidencia para demostrar que se trata de un contrato de renta vitalicia es la propia escritura otorgada por las partes. La escritura se titula "Renta Vitalicia"; en su párrafo Quinto se hace constar:

"QUINTO: Las partes han convenido la celebración de un contrato de renta vitalicia, el cual llevan a cabo de conformidad con las cláusulas y estipulaciones del presente otorgamiento."

En su párrafo séptimo estipularon que "el precio o consideración por la cual se verifica la referida enajenación es aleatorio, en su virtud el cedente impone a los cesionarios una renta vitalicia de . . . ."

Respecto a la forma de pago, términos y advertencias, se dice en la escritura:

---

[4] Véase Scaevola, *Código Civil*, Tomo XXVIII, págs. 188–193 y el interesante escolio (12) en *Manautou* v. *Srio. de Hacienda*, 87 D.P.R. 185 (1963).

"FORMA DE PAGO.—Los cesionarios se comprometen y obligan a satisfacer al cedente las referidas rentas que suman cuatro mil doscientos sesenta y siete dólares anuales en total, en plazos mensuales de trescientos cincuenta y cinco dólares con cincuenta y ocho centavos cada uno.

"TERMINOS.—OCTAVO.—Los referidos plazos mensuales se pagarán durante la vida natural del cedente, a contar del primero de enero del año mil novecientos sesenta, a cuya fecha se retrotrae este contrato, disponiéndose que el último pago se hará por la totalidad del mes en que ocurra el fallecimiento.

". . . . . . . .

"ADVERTENCIAS.—El fedatario hizo a los otorgantes las advertencias legales del caso, especialmente las que se refieren a la naturaleza y alcance del contrato de renta vitalicia y según el Código Civil y la legislación vigente y la jurisprudencia que rige en Puerto Rico."

■ Respecto al segundo punto, los recurrentes insisten en que cuando la pensión anual a satisfacer es mayor que el rédito producido por el valor de la propiedad, la ley no hace tributable la renta vitalicia. Tampoco tienen en ello razón. El texto del apartado (a) de su Sec. 1ra. no deja lugar a dudas. Cubre y define donación a *cualquier traspaso de propiedad* con la obligación por parte del adquirente de pagar al transmitente *cualquier renta vitalicia*" si el adquirente fuese pariente del transmitente dentro del tercer grado de consanguinidad o segundo de afinidad. La frase "aunque ésta sea equivalente al rédito producido por el valor de la propiedad" —que indudablemente se tomó del memorándum explicativo del entonces Tesorero—no tiene el efecto de crear condiciones, excepciones o limitaciones al amplio y abarcador sentido de las frases "cualquier traspaso de propiedad" y "cualquier renta vitalicia."

Acertados consideramos los siguientes párrafos del alegato del recurrido sobre éste y otros aspectos del recurso:

"De lo anterior se deduce que el propósito perseguido por la Ley 103 de 1950, enmendatoria de la Ley 303 de 1946, es que se

considere donación cualquier traspaso de propiedad con la obligación por parte del adquirente de pagar al transmitente cualquier renta vitalicia, si el adquirente fuese pariente del transmitente dentro del tercer grado de consanguinidad o segundo de afinidad, tributando en estos casos todos los bienes objeto de la donación sin que se deduzca el importe de la obligación del donatario.

"De prevalecer la interpretación que propugnan los recurrentes, se estaría frustrando el propósito que animó al legislador al aprobar la Ley Núm. 103 de 1950 enmendando la Sección 1 de la Ley Núm. 303 de 1946, ya que bastaría con fijar una renta vitalicia superior en cualquier cantidad, por mínima que fuese, al rédito producido por el valor de la propiedad, para que la transacción no constituya una donación bajo las disposiciones de la Ley de Contribución sobre Herencia. Esa interpretación es contraria a la intención legislativa al enmendar la Ley, pues quedaría subsistente la laguna que quiso eliminar ·de la Ley de Contribución sobre Herencia nuestra Asamblea Legislativa.

"Además, entendemos que la frase 'aunque ésta sea equivalente al rédito producido por el valor de la propiedad' no limita ni condiciona el mandato legislativo de que se considerará donación cualquier traspaso de propiedad, con la obligación por parte del adquirente de pagar al transmitente cualquier renta vitalicia, si el adquirente es pariente del transmitente dentro del tercer grado de consanguinidad o segundo de afinidad. De acuerdo con el diccionario de la Real Academia Española, la palabra 'aunque' es una conjunción adversativa con que se denota oposición, a pesar de lo cual puede ser, ocurrir o hacerse alguna cosa. Por lo tanto, podemos concluir que el uso de la frase antes mencionada no desvirtúa el hecho de que a tenor con lo dispuesto en el precepto legal a que hemos estado refiriéndonos, es inmaterial la cuantía de la renta vitalicia que se establezca en el contrato.

"Independientemente de todo lo expresado anteriormente, debemos señalar el hecho de que, al ventilarse el caso ante el Tribunal Superior, no se presentó prueba alguna para demostrar cual era el rédito producido por las propiedades transferidas. El Tribunal, al dictar la sentencia, tampoco hizo pronunciamiento alguno sobre este extremo. El recurrido aceptó que tomando como base un rendimiento anual de 6% el rédito sería menor que la renta vitalicia en la suma de $8.78 mensuales; pero aclaró que ello no significaba que la suma de ese modo obtenida fuera el

rédito producido por las propiedades ni que ese fuera el criterio que debe utilizarse para determinar el rédito. (Véase Contestación a la Demanda, y pág. 9 del Memorando del Demandado.)

"Los recurrentes acuden a los principios de Derecho Civil relativos a las donaciones para tratar de demostrar que la transacción realizada no es una donación. Pero, en el presente caso, se trata de un problema de derecho contributivo que debe ser resuelto a la luz de la ley especial que rige la materia. *Carmen Goenaga vda. de Pizá* v. *Secretario de Hacienda,* Núm. 287, opinión de 16 de octubre de 1962; *Semanaz* v. *Secretario de Hacienda,* 76 D.P.R. 411, 416 (1954); *Albanese* v. *Secretario de Hacienda,* 76 D.P.R. 324, 329 (1954); *González* v. *Secretario de Hacienda,* 75 D.P.R. 920, 925 (1954); *Wood* v. *Tribunal de Contribuciones,* 71 D.P.R. 233, 235 (1950). Y como ya vimos anteriormente, bajo el estatuto particular sobre la materia—Ley Núm. 303 de 12 de abril de 1946, según enmendada—la transacción efectuada entre los recurrentes y el Sr. Fernando García Rodríguez constituye una donación.

".　　　·　　　·　　　·　　　·　　　·　　　·　　　·

"Por último, los recurrentes alegan que la limitación que a parientes dentro de ciertos grados impuso el legislador es contraria a la Constitución de Estados Unidos, a la Constitución del Estado Libre Asociado de Puerto Rico, y a cuanto sobrevive de la Carta Orgánica de Puerto Rico, 'por establecer la presunción concluyente de que una transacción entre parientes de ciertos grados tiene por fin evadir el pago de una contribución, lo cual les priva del debido procedimiento de ley.'

"Los tribunales han reconocido la amplia facultad legislativa de establecer clasificaciones razonables en la imposición de contribuciones—*Porto Rico Telephone Co.* v. *Tribunal de Contribuciones,* 81 D.P.R. 982, 1004, (1960) y casos allí citados. Entendemos que la clasificación que establece la disposición de la Ley 303 impugnada por los recurrentes no es arbitraria, opresiva o caprichosa, y que la misma tiene como propósito promover un fin público permisible.

"Además, el que impugna la clasificación contenida en una ley tiene el peso de la prueba para demostrar que no descansa sobre una base razonable y que es esencialmente arbitraria. *Miranda* v. *Secretario de Hacienda,* 77 D.P.R. 171, 179 (1954). Y en el presente caso, los recurrentes no han demostrado que la clasi-

ficación que hace la Ley de Contribución sobre Herencia es irrazonable y arbitraria."

*Por todo lo expuesto, debe confirmarse la sentencia recurrida.*